561 F.2d 429
 Fed. Sec. L. Rep. P 96,149
Richard J. STULL, Plaintiff-Appellant,
v.
Nicholas H. BAYARD, Paul L. Miller, Howard Piper, Thomas F.
Piper and William T. Piper, Jr., Individually and as
Executors of the Estate of William T. Piper, Deceased,
Nicholas M. Salgo, David W. Wallace, Bangor Punta
Corporation and The First Boston Corporation, Defendants-Appellees.
 No. 1241, Docket 77-7088.
 United States Court of Appeals,
Second Circuit.
 Argued May 27, 1977.
Decided Aug. 26, 1977.
 
 Irving Bizar, New York City (Demov, Morris, Levin & Shein, New York City, Martin Rosengarten, New York City, of counsel), for plaintiff-appellant.
 James V. Ryan, New York City (Rogers & Wells, New York City, of counsel), for defendant-appellee Bangor Punta Corp.
 Paul G. Pennoyer, Jr., New York City (Chadbourne, Parke, Whiteside & Wolff, New York City, of counsel), for defendants-appellees Howard Piper, Thomas F. Piper and William T. Piper, Jr.
 Charles W. Sullivan, New York City (Sullivan & Cromwell, New York City, of counsel), for defendant-appellee The First Boston Corp.
 Before VAN GRAAFEILAND, Circuit Judge, and MEHRTENS* and PIERCE,** District Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 This action arises out of the unsuccessful attempt of Chris-Craft Industries (Chris-Craft) to acquire control of Piper Aircraft Corporation (Piper).[1] Plaintiff, a Piper shareholder, brought suit under § 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(e), alleging that he and other members of a putative class were induced not to exchange their Piper shares for Chris-Craft stock and cash because of fraudulent misstatements and omissions by defendants. The District Court granted defendants' motion for summary judgment on the ground that plaintiff's claim was barred by the statute of limitations. We affirm.
 
 
 2
 During 1969, Chris-Craft and Bangor Punta Corporation (Bangor Punta) were engaged in a battle for control of Piper. To induce Piper shareholders to surrender their stock, Chris-Craft made a number of cash tender and stock exchange offers, the last of which expired on August 4, 1969. On July 18, 1969, Bangor Punta filed a prospectus and extended a competing exchange offer. On August 1, 1975, plaintiff commenced this suit against Bangor Punta and The First Boston Corporation, an investment adviser and underwriter, and named as additional defendants certain officers of these corporations and of Piper. His theory of action was that a series of misstatements and omissions by defendants between January and mid-July 1969 induced a number of Piper shareholders not to accept Chris-Craft's final exchange offer. The last wrongful act alleged in the complaint was the overevaluation of an asset in the July 18 Bangor Punta prospectus.
 
 
 3
 The trial court held that plaintiff's action was governed by a six-year statute of limitation which ran from the last fraudulent act committed by defendants.[2] Because this had occurred on July 18, 1969 and plaintiff did not sue until August 1, 1975, the court found his action to be time-barred. This appeal followed.
 
 
 4
 Section 14 of the Securities Exchange Act of 1934 prescribes no period of limitation for actions brought thereunder. In such a situation, federal courts apply those statutes of limitation of the forum state which best effectuate the policies underlying the federal statute. Arneil v. Ramsey,550 F.2d 774, 779 (2d Cir. 1977). In actions alleging fraudulent violations of the federal securities law, this court has consistently adopted state statutes of limitation for actions based upon common law fraud. See, e. g., Klein v. Shields & Co., 470 F.2d 1344, 1346 (2d Cir. 1972); Klein v. Auchincloss, Parker & Redpath, 436 F.2d 339, 341 (2d Cir. 1971); Hoff Research & Development Laboratories, Inc. v. Philippine National Bank, 426 F.2d 1023 (2d Cir. 1970).[3] We look to federal law, however, to determine when the limitation period starts to run. Arneil v. Ramsey,supra, 550 F.2d at 780. Under federal law, the statute commences to run when the plaintiff has actual knowledge of the alleged fraud or knowledge of facts which in the exercise of reasonable diligence should have led to actual knowledge. Berry Petroleum Co. v. Adams & Peck, 518 F.2d 402, 410 (2d Cir. 1975); Klein v. Shields & Co., supra, 470 F.2d at 1346-47; Azalea Meats, Inc. v. Muscat, 386 F.2d 5, 8-9 (5th Cir. 1967).
 
 
 5
 The New York statute of limitation most closely analogous to this federal rule, C.P.L.R. § 203(f), provides in part:
 
 
 6
 . . . (W)here the time within which an action must be commenced is computed from the time when facts were discovered or from the time when facts could with reasonable diligence have been discovered, or from either of such times, the action must be commenced within two years after such actual or imputed discovery . . . .
 
 
 7
 Because it is undisputed that plaintiff had actual knowledge of defendants' alleged violations of § 14 no later than May 10, 1971, this provision, standing alone, would be a clear bar to the present action. Rickel v. Levy, 370 F.Supp. 751, 756-57 (E.D.N.Y.1974).
 
 
 8
 However, C.P.L.R. § 203(f), read in conjunction with C.P.L.R. § 213, also permits an action based upon fraud to be brought within six years "from the time the cause of action accrued" if this is longer than the two-year period above provided for. "The result, in an actual fraud suit, is two separately-timed and alternative limitations periods in the case of a delayed discovery: six years from accrual or two years from discovery, whichever is longer." Hoff Research & Development Laboratories, Inc. v. Philippine National Bank, supra, 426 F.2d at 1026 (footnote omitted).
 
 
 9
 The alternative six-year period is not measured from the date of the defendant's last fraudulent act, but from when the plaintiff suffers a loss as a result thereof, Sack v. Low, 478 F.2d 360, 365-66 (2d Cir. 1973); i.e., when a plaintiff with assumed knowledge of the fraudulent wrong may assert a claim for relief. Barninger v. National Maritime Union, 372 F.Supp. 908, 913 (S.D.N.Y. 1974); Practice Commentary C203:12 7B McKinney's Consolidated Laws 125-127 (1976). In the instant case, the District Court correctly held that this right accrued promptly following defendants' fraudulent conduct.
 
 
 10
 The federally created right upon which plaintiff bases his claim is the right to full disclosure of accurate information which would have helped him to decide whether to retain his stock or surrender it to the take-over bidder. Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 58, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975). Appellant was deprived of this right on July 18, 1969, when the pool of information accessible to Piper shareholders was muddied by Bangor Punta's allegedly misleading prospectus. Although § 14(e) does not specifically provide plaintiff a cause of action for this deprivation, such a right to sue has generally been inferred. See, e. g., H.K. Porter Co. v. Nicholson File Co., 482 F.2d 421, 424 (1st Cir. 1973). Moreover, it has been extended to both tendering and nontendering shareholders. Smallwood v. Pearl Brewing Co., 489 F.2d 579, 596 (5th Cir.), cert. denied, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974); Electronic Specialty Co. v. International Controls Corp., 409 F.2d 937, 947 (2d Cir. 1969). Whatever uncertainty may attach to these holdings as a result of the Supreme Court's caveat in Piper v. Chris-Craft Industries, Inc., 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977) need not concern us here. Assuming that plaintiff had a right to sue and, in addition, had immediate knowledge of defendants' misrepresentations as contemplated by New York's six year statute of limitation, his right to seek legal relief accrued when the misrepresentations were made. He was not precluded from suit, as he now contends, until Chris-Craft's tender offer expired unaccepted on August 4, 1969.[4] Regardless of plaintiff's decision concerning tender of his stock, he might well have sustained damage because of the depressing effect which disclosure of the Bangor Punta overevaluation might have had on the market value of Piper stock. See Electronic Specialty Co. v. International Controls Corp., supra, 409 F.2d at 946; cf. Dann v. Studebaker-Packard Corp., 288 F.2d 201, 209 (6th Cir. 1961). Because plaintiff, with the knowledge presumed by New York's six year statute, did have a claim which he could promptly pursue, the District Court correctly rejected his contention that his cause of action did not accrue until Chris-Craft's tender offer expired on August 4, 1969.
 
 
 11
 Relying upon American Pipe & Construction Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), appellant argues that the six year statute of limitation was tolled for a two year period during which a related class action was pending. In 1972, appellant's wife, with appellant acting as her attorney, commenced a class action on a complaint almost identical to the one herein. On April 30, 1974, the District Court refused to certify a class in that action, see Stull v. Pool, 63 F.R.D. 702 (S.D.N.Y. 1974), and thereafter the case was settled. Appellant now contends that the statute of limitations was tolled from 1972 until 1974 when class action status was denied.
 
 
 12
 In American Pipe, the Supreme Court held that
 
 
 13
 at least where class action status has been denied solely because of failure to demonstrate that 'the class is so numerous that joinder of all members is impracticable,' the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status.
 
 
 14
 414 U.S. at 552-53, 94 S.Ct. at 766.
 
 
 15
 Appellant's argument that this reprieve should be extended to class members who file separate suits after the class action has been terminated and the statute of limitation has expired is completely without merit. "(T)he rule of American Pipe was intended for the benefit of purported members of the class who sought to intervene in the action after class status was denied." Arneil v. Ramsey, supra, 550 F.2d at 783.
 
 
 16
 Affirmed.
 
 
 
 *
 Of the Southern District of Florida, sitting by designation
 
 
 **
 Of the Southern District of New York, sitting by designation
 
 
 [1]
 The story of the attempted takeover is told in Piper v. Chris-Craft Industries, Inc., 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977). The history of the instant litigation is in the District Court's opinion reported at 424 F.Supp. 937 (S.D.N.Y.1977)
 
 
 [2]
 Although there is substantial support among legal commentators for an outside cut-off period of limitation which starts to run on the date of the last act constituting the violation, see, e. g., A.L.I.Fed.Sec.Code §§ 1422(b), (d) (Tent.Drafts Nos. 1-3, 1974); Martin, Statutes of Limitation in 10b-5 Actions, 29 Bus.Law 443, 454-57 (1974); Bateman & Keith, Statutes of Limitations Applicable to Private Actions Under SEC Rule 10b-5: Complexity in Need of Reform, 39 Mo.L.Rev. 165, 178-80 (1974), we do not read the District Court's opinion as a literal adoption of this proposal
 
 
 [3]
 Limitation periods contained in state Blue Sky laws have been utilized by other circuits in a number of Rule 10b-5 cases. See, e. g., LaRosa Building Corp. v. Equitable Life Assurance Society, 542 F.2d 990 (7th Cir. 1976); Newman v. Prior, 518 F.2d 97 (4th Cir. 1975); Parrent v. Midwest Rug Mills, Inc., 455 F.2d 123 (7th Cir. 1972)
 
 
 [4]
 Assuming that plaintiff acquired knowledge of defendants' misrepresentations, he might have endangered his right of recovery if he sat idle until the Chris-Craft tender offer expired and avoidable damages accrued. "The purpose of the Securities Exchange Act is to protect the innocent investor, not one who loses his innocence and then waits to see how his investment turns out before he decides to invoke the provisions of the Act." Royal Air Properties, Inc. v. Smith, 312 F.2d 210, 213-14 (9th Cir. 1962); see also Hughes v. Dempsey-Tegeler & Co., 534 F.2d 156, 175 (9th Cir.), cert. denied, 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976); Pearlstein v. Scudder & German, 527 F.2d 1141, 1145-46 (2d Cir. 1975); Lowenschuss v. Kane, 520 F.2d 255, 269 (2d Cir. 1975)