**Henry Hart RICE, Abram Barkan and James Felt & Company, Inc., Plaintiffs,**

v.

**Irwin BARON, Defendant,**

v.

**HARROW PROPERTY CORPORATION and James Felt Realty Services, Inc., Additional Defendants on Counterclaims.**

No. 77 Civ. 1890(RLC).

United States District Court, S. D. New York.

Sept. 6, 1978.

Bachner, Tally & Mantell, New York City, for plaintiffs and counterclaim defendants; Martin D. Polevoy and Sol V. Slotnik, New York City, of counsel.

Corbin & Gordon, New York City, for defendant Irwin Baron; Sol Neil Corbin, Stephen B. Silverman and Steven A. Schatten, New York City, of counsel.

ROBERT L. CARTER, District Judge.

OPINION

Plaintiffs, Henry Hart Rice, Abram Barkan and James Felt & Co. ("Felt") commenced this action against the defendant, Irwin Baron, alleging that Baron had violated certain provisions of the federal securities laws[1] and had committed common law fraud in connection with his sale of Felt shares to the plaintiffs in 1971. In his answer, Baron denied the material allegations of the complaint, raised certain affirmative defenses, asserted two counterclaims, and joined two additional parties as counterclaim defendants—Harrow Property Corporation ("Harrow") and Felt Realty Corporation ("Felt Realty").

Defendant seeks summary judgment pursuant to Rule 56, F.R.Civ.P., as to all of Felt's pending claims against him on the grounds that all such claims are barred by the applicable statute of limitations. In addition, Baron seeks to disqualify the firm of Bachner Tally & Mantel ("Bachner Tally"), which currently represents all of the plaintiffs and counterclaim defendants in

---

1. Plaintiffs allege that defendant violated § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (1976), § 10(b) of the Securities Ex- change Act of 1934, 15 U.S.C. § 78j(b) (1976), and Rule 10b–5, 17 C.F.R. 240.10b–5 (1977).

this action, from further representing any of these clients on the grounds that (1) Charles Tally, one of the senior partners at the Bachner Tally firm, will be called upon at trial to give testimony which will or may be prejudicial to his clients; and (2) that Bachner Tally suffers from a disabling conflict of interest in attempting to represent *all* of the plaintiffs and counterclaim defendants in this action simultaneously. For the reasons set out below, defendant's motion for summary judgment is granted, and his motion for disqualification is granted in part.

*Facts*

In February of 1969, a severe fire broke out in a building located at 595 Fifth Avenue, New York City, a building owned by Acruem Associates ("Acruem") and managed by Felt. Litigants Rice, Barkan and Baron were all affiliated with Felt at the time of the fire, but, on the present record, the precise positions each of them held cannot be determined. As a result of that conflagration, several people died and numerous others were injured. The catastrophe spawned litigation by the survivors of the blaze and by the relatives of those who did not survive to recover damages for the injuries caused by the fire. The first summons in these "Fire Actions" was served on Felt on December 29, 1969.

Soon thereafter, on January 1, 1970, the Felt corporate leadership underwent some reorganization. Barkan, who had been Felt's Executive Vice President, was named President of the company. Rice, who had been Felt's Vice President, was designated Senior Vice President. Baron became Chairman of Felt's Board of Directors. And Ralph R. Russ, a non-party to this action, continued to occupy the same position he had held prior to the corporate reshuffling—Treasurer.

One month later, on February 17, 1970, Russ, acting on Felt's behalf, sought to engage John J. Bower to represent Felt in

the Fire Actions. Bower had already been designated to represent Acruem in that litigation. On March 18, 1970, Bower accepted the proffered employment. Russ also arranged for Milton Lebe to represent Felt's interest in the Fire Actions to the extent that its liability in those actions might exceed the applicable insurance coverage, at which point the interests of Acruem's insurer and Felt would diverge. In that connection, Felt was advised by the Bower firm on June 11, 1970, that the total amount of damages demanded in the Fire Actions far exceeded the insurance coverage applicable to satisfy claims arising from the fire.

In January of 1971, the allocation of power at Felt was again redistributed. At that time, the Board of Directors elected Barkan, Rice and Russ as a three-member Executive Committee invested with all the power of the Board itself. Concurrently, the Board approved the sale of 500 shares of Felt from Baron back to the corporation at a price of $250 per share. That sale of shares was consummated on January 28, 1971.

On April 13, 1971, Felt's financial statements for the fiscal year ending January 31, 1971, were issued by Eisner & Lubin, a firm of certified public accountants. Footnote "G" of that statement provided that:

> "The corporation . . . [Felt] is a co-defendant in a suit for damages arising from a fire at 595 Fifth Avenue, a building managed by it. The aggregate of the claims exceeds the insurance coverage but, in the opinion of counsel, the amount of recovery will be within the limits of the liability insurance carried by the building owner."

It is that footnote which plaintiffs allege was materially misleading in that it understated the potential liability of Felt in the Fire Actions and upon which plaintiffs appear to focus the bulk of their claims of securities law violations and common law fraud.[2]

---

**2.** It is somewhat puzzling how Felt could have been misled in purchasing shares on January 28, 1971, by a financial statement which was issued some 2½ months later. In light of the ruling here, however, that puzzle need never be solved.

On June 2, 1971, Baron effected two additional sales of Felt shares. On that date, Baron sold 190 shares to Rice for an aggregate purchase price of $103,900 and 190 shares to Barkan at an equivalent price. On that same day, Baron entered into an employment contract with Felt for the period beginning February 1, 1971, and ending on January 31, 1977 ("Employment Contract"). That contract provided for Baron to receive a fixed salary plus a percentage of Felt's annual earnings before taxes each year.

On March 31, 1972, a decision on the issue of liability in the Fire Actions was rendered. Both Acruem and Felt were held to be active tortfeasors and to be liable for all the damages arising from the fire.

Soon after the filing of decision, Barkan scheduled a meeting for April 13, 1972, of certain of Felt's officers and professional advisors at the Bachner Tally offices. Those attending included Rice, Russ, Barkan, representatives of Eisner & Lubin (Felt's accountants), Milton Lebe (Felt's counsel as to excess liability in the Fire Actions), William Brach of Brach, Eichler, Rosenberg & Silver (Barkan's personal counsel), and both Charles Tally and Charles Salfeld of the Bachner Tally firm. Baron did not attend that meeting.

The purpose of the April 13th meeting was to discuss the ramifications for Felt and those connected to it of the decision on liability in the Fire Actions. In connection with that meeting, Rice sent a memorandum to Charles Tally, dated April 13, 1972 ("Rice Memorandum"), detailing certain considerations which needed to be taken into account in determining the proper course of action for Felt to follow now that it had been held liable in the Fire Actions. Those considerations included: (1) avoiding any increase in the net worth of Felt; (2) trying to avoid the embarrassment of a Felt bankruptcy; and (3) trying to set up some kind of vehicle to carry on the business of Felt should the liability from the Fire Actions threaten to destroy the corporation. Specifically Rice suggested that they

"might consider bringing into being a new company which would use the name 'Felt' but not necessarily 'James Felt'; that this new entity conduct their consulting and brokerage business; that the old company remain in business and continue management. At some point within the next year, [he] would like to change the name of the old company to J.F. Management or some similar derivation which would avoid the word 'Felt' in its title in case it became necessary to sacrifice [Felt]."

At the April 13th meeting, a memorandum prepared by Charles Salfeld ("Bachner Tally Memorandum") addressing the issues raised in the Rice Memorandum was distributed to those in attendance, including Barkan and Rice. That memorandum stated the following conclusions: (1) if officers and directors of one corporation acted simultaneously as the officers and directors of a second corporation, to which new business was diverted to the detriment of the former, those officers or directors would have violated their fiduciary obligations to the first corporation; (2) if the officers and directors of Felt resigned their positions en masse and created a second, competing corporation to which they attracted most of Felt's business, they probably would have violated their fiduciary obligations to Felt; and (3) if the acts of the officers and directors in depriving a corporation of a business opportunity were detrimental to that corporation's creditors, those creditors would have standing to sue the officers and directors derivatively on behalf of the corporation.

On June 13, 1972, some two months after the meeting at the Bachner Tally offices, Barkan wrote to Tally on a Felt letterhead, thanking him for his "wise counsel and support in their moment of crises." Included with Barkan's letter was a $1,000 check made out from Felt to Bachner Tally.

The Fire Actions were ultimately settled on June 16, 1972, for a total amount of $2,370,000. Felt did not participate in that settlement, and Acruem and its insurer reserved their rights to seek contribution from Felt.

In March of 1973, Felt underwent a structural transformation. Its shareholders joined together with the shareholders of the unrelated corporation of Huberth & Huberth ("H & H") to form a new corporation—James Felt-Huberth & Huberth, Inc. ("JF–H & H"). All Felt stockholders exchanged their Felt stock for shares in the new company, and all H & H stockholders made a similar exchange with respect to their H & H shares. Felt then ceased active operations and its activities were carried on by JF–H & H. The new corporation assumed all of Felt's obligations under its Employment Contract with Baron pursuant to an agreement entered into by it, Felt and Baron on March 13, 1973 ("Assumption Agreement").

The threatened contribution suit against Felt by Acruem and its insurer finally materialized in December of 1973. In an action entitled *Emil v. James Felt & Co., Inc.*, 45 A.D.2d 677, 356 N.Y.S.2d 303, and instituted in New York County Supreme Court, Acruem and its insurer sought to recover a portion of that sum which they had paid out in settlement of the Fire Actions.

In July of 1975, while the *Emil* suit was percolating, the corporate structure of the young JF–H & H underwent its own transformation. All the original H & H shareholders turned back their shares of JF–H & H in return for the H & H shares they had once held—in effect undoing their earlier transaction. The name of JF–H & H was then changed to Harrow and it continued to operate as before and to hold all of the shares of Felt.

In September of 1975, the final corporate actor in this scenario came into being; Felt Realty was created and commenced operations. Rice became Chairman of the Board of the new company as well as the owner of 45% of its shares. Barkan became the company's President and he too held 45% of its shares. Felt Realty, it appears, soon succeeded to the business, assets and personnel of Harrow, which then, like its predecessor Felt, ceased active operations.

In December of 1975, Bachner Tally, which had not represented Felt or its directors since the April 13, 1972 meeting at its offices, was retained by Felt to assume the management of the *Emil* litigation. Some months later, on March 3, 1976, Martin Polevoy of the Bachner Tally firm sent a copy of the Bachner Tally Memorandum concerning fiduciary responsibilities to Rice and Barkan. And in March of 1977, the *Emil* litigation was finally concluded by virtue of a settlement agreement entered into by the parties.

The following month, on April 20, 1977, plaintiffs commenced this action claiming that Baron had defrauded them by inducing them in 1971 to purchase his Felt shares on the basis of the allegedly misleading Felt financial statement coupled with additional oral misrepresentations, all of which significantly underestimated Felt's potential liability in the Fire Actions. In his answer, Baron denied plaintiff's allegations and asserted his own claims for damages against the plaintiffs and the additional counterclaim defendants—Harrow and Felt Realty. Defendant alleges in his first counterclaim that Felt and Harrow defaulted on their obligations to him under the Employment Contract and Assumption Agreement respectively by failing to pay him his fixed salary from June 1, 1976, through January 31, 1977, and by failing to pay him his profit percentage from February 1, 1975, through January 31, 1977. In his second counterclaim, Baron alleges that Rice and Barkan breached their fiduciary duties to Felt and Harrow by creating Felt Realty and diverting business, revenues and profits from Felt and Harrow to Felt Realty, thereby injuring Baron by reducing the amounts he would be paid under the Employment Contract and Assumption Agreement. Baron also alleges that Felt Realty conspired with Rice and Barkan in their scheme to divert business, revenues and profits to Felt Realty, and that it wrongfully induced Felt and Harrow to default on their obligations to Baron under the Employment Contract and Assumption Agreement.

*Discussion*

1. *Statute of Limitations*

The first branch of Baron's instant motion focuses on Felt's securities and com-

## B. *Multiple Representation*

 Baron's alternative contention is that Bachner Tally must be disqualified from further representing all of its present clients in this suit *simultaneously* because such multiple representation places the firm under a disabling conflict of interest. He relies on Canons 5[14] and 9[15] of the Code and more specifically on D.R. 5–105(B) which provides:

"A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(C)." (Footnote omitted.)

The latter section of the Rule then provides:

"[A] lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

Defendant also points out that the ethical considerations ("E.C.") accompanying Canon 5 "provide that the professional judgment of a lawyer must be exercised solely for the benefit of his client, free of competing influences and loyalties, and this precludes his acceptance of employment that will adversely affect his judgment or dilute his loyalty." *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir. 1976); *see* Code, E.C. 5–1, 5–14.

Baron maintains that Bachner Tally's joint representation of Felt and Harrow, on the one hand, and Rice, Barkan and Felt Realty, on the other, violates these ethical precepts. The alleged conflict between these two groups is said to be generated by Baron's counterclaims. Thus, Baron argues that if he successfully recovers on his counterclaim against Felt and Harrow wherein he alleges that they defaulted on their respective obligations under the Employment Contract and Assumption Agreement, it will be in their interest to assert a claim for indemnification over against the remaining counterclaim defendants—Rice, Barkan and Felt Realty—thereby setting up the conflict of interest between the two groups.

This potential indemnification claim against Rice, Barkan and Felt Realty would be premised on precisely the same factual contentions that underly Baron's own second counterclaim, *i. e.*, that Rice and Barkan breached their fiduciary obligations to Felt and Harrow by diverting assets, revenues, and business from Felt and Harrow to Felt Realty; that Felt Realty aided and abetted them in committing that breach; and that all of this activity was to the detriment of Baron's rights under the Employment Contract and Assumption Agreement. Since any default by Felt and Harrow on their obligations to Baron could be characterized as having been caused by the alleged fiduciary breaches of Rice and Barkan, breaches which Felt Realty is alleged to have aided and abetted, Baron maintains that Felt and Harrow could require Rice, Barkan and Felt Realty to indemnify them for any judgment rendered against them in Baron's favor. In addition, Baron suggests that based on those same factual contentions Felt, or Harrow, or one of Harrow's shareholders suing derivatively,[16] might wish to institute an independent action against Rice, Barkan and Felt Realty to recover any additional monies that were wrongfully diverted from Felt and Harrow to Felt Realty.

Baron argues that the potentially adverse interests of these two sets of clients, as just outlined, make it impossible for Bachner Tally properly to exercise its independent professional judgment on behalf of each set of clients simultaneously, and that in at-

---

**14.** *See* n. 6 *supra.*

**15.** Canon 9 provides: "A lawyer Should Avoid Even the Appearance of Professional Impropriety."

**16.** Obviously no Felt shareholder would sue derivatively since Felt is a wholly owned subsidiary of Harrow.

tempting to do so, the firm creates, at the very least, the appearance of representing conflicting interests. *See Cinema 5, Ltd. v. Cinerama, Inc., supra,* 528 F.2d at 1387. Consequently, Baron urges that Bachner Tally must be disqualified from representing at least one set of its present clients.

In *Estates Theatres, Inc. v. Columbia Pictures Industries, Inc.,* 345 F.Supp. 93 (S.D. N.Y.1972), Judge Weinfeld articulated the policy underlying the rule against dual representation where one client may be adversely affected by his lawyer's representation of a second client. As the court there stated:

> "[C]onsiderations of public policy, no less than the client's interests, require rigid enforcement of the rule against dual representation where one client is likely to be adversely affected by the lawyer's representation of another client and where it appears he cannot exercise independent judgment and vigorous advocacy on behalf of the one without injuring the interests of the other. A lawyer should not be permitted to put himself in a position where, even unconsciously he will be tempted to 'soft pedal' his zeal in furthering the interests of one client in order to avoid an obvious clash with those of another, at least in the absence of the express consent of both clients."

*Id.* at 99 (footnotes omitted). More recently our Court of Appeals has written that " 'with rare and conditional exceptions, the lawyer may not place himself in a position where a conflicting interest may, even inadvertently, affect, or give the appearance of affecting, the obligations of the professional relationship.' " *Cinema 5, Ltd. v. Cinerama, Inc., supra,* 528 F.2d 1386, *quoting Matter of Kelly,* 23 N.Y.2d 368, 376, 296 N.Y. S.2d 937, 946, 244 N.E.2d 456 (1968).

If, in the present case, Felt and Harrow had already asserted a crossclaim for indemnification against Rice, Barkan and Felt Realty, " 'no one could conscionably contend' " that Bachner Tally could simultaneously represent both the cross claim plaintiffs and the cross claim defendants in this action. Code, Canon 5 n.19, *quoting*

*Jedwabny v. Philadelphia Transportation Co.,* 390 Pa. 231, 235, 135 A.2d 252, 254 (1957); *see Cinema 5, Ltd. v. Cinerama, Inc., supra,* 528 F.2d at 1386. The question presented here then is whether in a situation which is one step removed from the hypothetical one just posed, *i. e.,* where Felt and Harrow *may* assert a cross claim for indemnification, or perhaps, institute an independent action for damages based upon the same facts that would give rise to the indemnification claim, there exists a sufficient conflict of interest between these two sets of litigants to warrant having them represented by separate counsel. The answer to that question must be "yes."

By the very fact of advising Felt and Harrow that they have any right to indemnification or any independent claim for damages against the remaining counterclaim defendants, Bachner Tally would be acting adversely to the interests of their present clients Rice, Barkan and Felt Realty. *See ABA Informal Ethics Opinions,* 1119 (1975). Conversely, in failing to so advise Felt and Harrow, Bachner Tally would, quite obviously, be acting adversely to the interests of Felt and Harrow, who are also current Bachner Tally clients. *See ibid.* Thus, the conflict of interest to which Bachner Tally is subject is immediately apparent.

Furthermore, in deciding whether to assert an indemnity claim, or institute an independent suit, or even take no action whatsoever as against Rice, Barkan and Felt Realty, Felt and Harrow are entitled to the independent professional judgment of counsel "free of compromising influences and loyalties." *Cinema 5, Ltd. v. Cinerama, Inc., supra,* 528 F.2d at 1386; *see* Code, E.C. 5–1. But here, where Bachner Tally is currently representing those very parties against whom such an indemnification claim or independent suit might lie, in litigation where the basis for such an indemnification claim or independent suit is specifically at issue, Bachner Tally is subject to precisely the conflicting pressures and loyalties which the Code seeks to prohibit by virtue of its Canons and Disciplinary Rules.

Cf. *Messing v. FDI, Inc.*, 439 F.Supp. 776 (D.N.J.1977); *Cannon v. U. S. Acoustics Corp.*, 398 F.Supp. 209 (N.D.Ill.1975), *aff'd in relevant part*, 532 F.2d 1118 (7th Cir. 1976); *Lewis v. Shaffer Stores Co.*, 218 F.Supp. 238 (S.D.N.Y.1963) (McLean, J.).

Even if Bachner Tally's judgment were in no way impaired by its current multiple representation, that representation is certainly sufficient to give the firm the " 'appearance of representing conflicting interests,' " *Cinema 5, Ltd. v. Cinerama, Inc., supra*, 528 F.2d at 1387, which is in and of itself sufficient to warrant disqualifying it from continuing to represent all of the counterclaim defendants simultaneously. *Ibid.; see Fund of Funds, Ltd. v. Arthur Anderson & Co.*, 567 F.2d 225, 234–35 (2d Cir. 1977). Thus, unless Bachner Tally can justify its continued representation of both sets of litigants in this action under one of those " 'rare and conditional exceptions,' " *Cinema 5, Ltd. v. Cinerama, Inc., supra*, 528 F.2d at 1386, to the ban against such multiple representation, the firm must be disqualified from continuing to represent all of its present clients in this action simultaneously.

The first exception pursuant to which Bachner Tally seeks to justify its multiple representation is what might be termed the "identity of interest" exception. *See Brown & Williamson Tobacco Corp. v. Daniel International Corp.*, 563 F.2d 671 (5th Cir. 1977). In *Brown & Williamson*, for example, although two corporations were technically in adverse positions in ongoing litigation, one being a fourth party plaintiff and the other a fourth party defendant, the court held that the joint representation of those two corporate entities was proper because of the "substantial identity of interests" between the companies. *Id.* at 673. The stock of each company was all owned by the same three members of one family, except for a miniscule amount held by the children of two of those three co-owners. *Ibid.* Moreover, the court recognized that the only reason that the affiliate corporation was sued at all was to insure that a fifth party could be brought into the action with whom, both affiliate corporations

agreed, any liability must lie. *Ibid.* Bachner Tally argues that the same result should apply here since any judgment against Felt or Harrow would affect substantially the same people as would a judgment against Felt Realty, and consequently these three corporations also maintain a "substantial identity of interests."

That argument must be rejected. Since Harrow owns 100% of Felt their interests are certainly identical. But the same cannot be said for the interests of Harrow and Felt Realty. Although Rice and Barkan are substantial shareholders of both corporations, each owning 33⅓ of Harrow and 45% of Felt Realty, the corporate holdings of the remaining shareholders differ as between the two corporations. Arthur Beman owns 16% of Harrow, but only 10% of Felt Realty; Russ owns 14% of Harrow, but 0% of Felt Realty; and Baron owns 1⅓ of Harrow, but 0% of Felt Realty. Thus, the stock ownership of Harrow and Felt Realty is sufficiently distinct so that it simply is not true that the same people would be affected financially in the same way regardless of whether Harrow or Felt Realty is forced to bear the financial responsibility of any judgment in Baron's favor. Moreover, in the present case, there exists the possibility of a successful indemnification claim by Felt and Harrow not only against Felt Realty, but also against the individual directors Rice and Barkan. Clearly Russ, Beman and Baron would benefit if either Rice or Barkan were forced to shoulder the full burden of any judgment against Felt or Harrow, rather than those corporations themselves. Therefore, the five counterclaim defendants here do not have the substantial identity of interests necessary to justify their joint representation by one law firm, and the result reached in *Brown & Williamson* cannot here obtain.

Alternatively, Bachner Tally maintains that all of its clients—Rice, Barkan, Felt, Harrow and Felt Realty—have freely and knowingly consented to their joint representation by the Bachner Tally firm. Accordingly, Bachner Tally argues that its continued representation of all of its

present clients is proper under the governing ethical standards. *See Petition of Trinidad Corp.,* 229 F.2d 423, 430 (2d Cir. 1955); *Estates Theatres, Inc. v. Columbia Pictures Industries, Inc., supra,* 315 F.Supp. at 99; Code, D.R. 5–105(C).

Bachner Tally's consent argument must also be rejected. Even had proper consents been submitted to the court on behalf of all five Bachner Tally clients, there would still be a serious question as to the propriety of the multiple representation in this action because of the potentially conflicting interests outlined above; it simply is not "obvious" that one firm can adequately represent the interests of both sets of counterclaim defendants. *See Matter of Kelly, supra,* 23 N.Y.2d 368, 378, 296 N.Y.S.2d 937, 945, 244 N.E.2d 456; Code, Canon 5 n.19; ABA Informal Ethics Opinions, C–723, 1119 (1975). *But compare In re Taylor,* 567 F.2d 1183 (2d Cir. 1977). In the present case, however, no such valid consents have ever been tendered to the court by Felt or Harrow. The consents submitted on behalf of those litigants were executed solely by Rice and Barkan— the very directors whom Baron alleges violated their fiduciary obligations to those same corporations. There is no indication of any participation by "non-interested" directors in the execution of those corporate consents, nor is there any suggestion of any other corporate procedure which was utilized to obviate the blatant conflict of interests that exists when the directors whose interests appear to be adverse to that of the corporation consent to joint legal representation on behalf of themselves *and* the corporation. *See Cannon v. U. S. Acoustics Corp., supra,* 398 F.Supp. 216 n.10. *See also Messing v. FDI, Inc., supra,* 439 F.Supp. at 784. In light of these circumstances, the purported consents of Felt and Harrow are insufficient to justify Bachner Tally's continued, joint representation of both Felt and Harrow, and the remaining counterclaim defendants. The court, therefore, concludes that these two sets of litigants must each be represented by separate counsel.

17. It is, of course, for the *court* to decide the appropriate remedy in a case where a conflict of interest arises. *Estates Theatres, Inc. v.*

### C. Remedy

Although it is clear that Bachner Tally cannot continue to represent all of its present clients in this action, the proper choice of which set of clients it should continue to represent is not similarly transparent.[17] On the one hand, Bachner Tally represented Felt in connection with the April 13th conference, transmitted the Bachner Tally Memorandum to Rice and Barkan again in 1976 (presumably in their roles as Felt directors), and then represented Felt in connection with the *Emil* litigation which ultimately settled in 1977. On the other hand, Bachner Tally has never been general counsel to Felt and has maintained a continuing attorney-client relationship with Rice since the 1950s. If those factors were the only ones to be considered in resolving the present conflict, I would hold that Bachner Tally's sustained representation of Felt in connection with matters relating to the issues raised by Baron's counterclaims dictates that Bachner Tally remain as counsel for Felt and Harrow and that new counsel be found for the remaining counterclaim defendants. In this case, however, certain additional factors need be considered.

First, it is significant that Felt's original claims which prompted this litigation are no longer at issue, the court having held that they were barred by the applicable statute of limitations. Rice and Barkan's initial claims, on the other hand, are still very much alive. Thus, both the court and those two plaintiffs could benefit from Bachner Tally's familiarity and expertise with respect to that aspect of this case while no comparable benefit could accrue to Felt or Harrow.

Second, in light of the proceedings which have so far taken place here, Felt and Harrow may well be better off obtaining counsel other than Bachner Tally to represent them in this litigation. Bachner

*Columbia Pictures Industries, Inc.,* 345 F.Supp. 93, 100 (S.D.N.Y.1972) (Weinfeld, J.)

Tally has to date adopted the position on behalf of all five of its clients that all their interests are coterminous. Bachner Tally has also expressed its preference to continue as counsel for Rice, Barkan and Felt Realty, rather than for Felt and Harrow, if it is required to withdraw as counsel for one set of its present clients. While this expression of preference is, of course, not binding on the court, *Estates Theatres, Inc. v. Columbia Pictures Industries, Inc., supra*, 345 F.Supp. at 100, it, together with the position which Bachner Tally has espoused thus far in the litigation, suggests that a more detached and impartial view of this suit and of the legal alternatives available to Felt and Harrow might be had by counsel other than Bachner Tally. In sum, "I believe that it would be wise for [Felt and Harrow] to retain independent counsel, who have had no previous connection with the corporation[s], to advise [them] as to the position which [they] should take in this controversy." *Lewis v. Shaffer Stores, supra*, 218 F.Supp. at 240 (citation omitted).

Upon consideration of these additional factors, I conclude that Bachner Tally should continue as counsel for Rice, Barkan and Felt Realty, and that Felt and Harrow should engage new and independent counsel. Defendant's contention that there would be an "appearance of impropriety," *see* Code, Canon 9, in Bachner Tally representing Rice, Barkan and Felt Realty after having represented Felt on the related matters detailed earlier fails to persuade me that this resolution of the present conflict is inappropriate. It may well be that if, after consultation with counsel, Felt and Harrow decide that it would be in their interests to disqualify Bachner Tally from further participating in this suit, Bachner Tally would be subject to disqualification based upon the claim that matters raised in this litigation are "substantially related" to matters in which Bachner Tally previously represented Felt. *See, e. g., Fund of Funds, Ltd. v. Arthur Anderson Co., supra; NCK Organization Ltd. v. Bregman*, 542 F.2d 128 (2d Cir. 1976); *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562 (2d Cir. 1973). Such a motion would invoke the strictures of Canon 4 [18] as well as Canon 9.[19] But the determination of that issue must await Felt and Harrow's decision as to where their interests in this litigation lie. "[That] is a matter for [them] to determine in the exercise of [their] independent legal and business judgment." *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 88 (5th Cir. 1976).

It is very possible that even after consulting with new and independent counsel, Felt and Harrow may determine that it is simply not in their interest to pursue an indemnification claim or an independent action against the remaining counterclaim defendants. They may, therefore, have no interest in seeking to disqualify Bachner Tally from further representing Rice, Barkan and Felt Realty in this action. After all, as Bachner Tally has pointed out, all of Harrow's shareholders, with the exception of Baron who owns only a miniscule portion of Harrow's shares, are connected in one way or another to Felt Realty.[20] While the rela-

---

18. Canon 4 provides: "A Lawyer Should Preserve the Confidences and Secrets of a Client."

19. *See n. 15 supra.*

20. The following listing details the interrelationships of the shareholders of Harrow and Felt Realty.

| "Name of Entity | Stockholders | Directors and Officers |
|---|---|---|
| Harrow (formerly James Felt-Huberth & Huberth, Inc.) | Barkan (33⅓%) * | Barkan – Director ** President |
| | Rice (33⅓%) * | Rice – Director Vice President |
| | Baron (1⅓%) * | Baron – Director |
| | Arthur K. Beman (16%) * | Beman – Director, Vice President |
| | Ralph R. Russ (14%) * | Russ – Director |
| Felt | Harrow (100%) * | Barkan – Sole Director, President and Treasurer |
| | | Rice – Vice President |

tionship between the shareholders of Felt Realty and the shareholders of Harrow is not sufficiently close to justify their joint representation under the doctrine of *Brown & Williamson, see* discussion *supra,* it may suffice in the world of practical realities to preclude any suit by Felt and Harrow against the remaining counterclaim defendants.[21] Thus, it would seem premature to prohibit Bachner Tally from further representing Rice, Barkan and Felt Realty at present.

If, on the other hand, Felt and Harrow conclude that it is in their interest to seek the disqualification of Bachner Tally from further participating in this litigation, that interest is adequately protected by making it perfectly clear now that the court will promptly entertain any motion by them to bar Bachner Tally from engaging in any further activity in connection with this suit. This resolution of the present conflict adequately protects the interest of all the parties to this litigation without imposing any undue burdens on the litigants or the judicial system.

To recapitulate, defendant's motion for summary judgment as to all of Felt's claims is granted. Defendant's motion to disqualify Bachner Tally as counsel in this action is granted as to Bachner Tally's representation of Felt and Harrow and denied with respect to its representation of Rice, Barkan and Felt Realty.

IT IS SO ORDERED.

| "Name of Entity | Stockholders | Directors and Officers |
|---|---|---|
| | | Jerome Catalano – Vice President and Secretary |
| Felt Realty | Barkan (45%) *** | Barkan **** – Director President and Treasurer |
| | Rice (45%) | Rice – Director and Chairman |
| | Arthur K. Beman (10%) | Beman – Director and Senior Vice President |
| | . | Russ – Director and Consultant |

\* Approximately.

\*\* There are other directors and officers of Harrow none of whom are involved in this action.

\*\*\* Very recently some shares of Felt Realty were sold to other directors and Rice and Barkan still own more than a majority of the outstanding shares.

\*\*\*\* There are other directors and officers of Felt Realty none of whom are involved in this action."

Affidavit of Martin Polevoy in Opposition to Motion to Dismiss Claims of James Felt & Co., Inc. and to Disqualify Counsel 5 (Jan. 9, 1978).

21. If Felt and Harrow determine that no legal action with respect to Rice, Barkan and Felt Realty is warranted, but a Harrow shareholder disagrees and decides to institute suit derivatively based upon the same factual contentions which underly Baron's second counterclaim, then that shareholder could move to intervene in this action and seek to disqualify Bachner Tally from further participating in this litigation based upon the strictures of Canons 4 and 9. *See In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 88 (5th Cir. 1976). However, the court declines to preclude Bachner Tally from further representing Rice, Barkan and Felt Realty solely on the grounds that a derivative action *might* be brought and that the shareholder litigant *might* move for the disqualification of Bachner Tally based upon the claim that it had formerly represented Felt on "substantially related" matters.