GILMAN BROTHERS INC., Plaintiff,

v.

PEAT, MARWICK, MITCHELL & CO.,
Joseph C. Burrows and Thomas J.
McLaughlin, Defendants.

No. 77 Civ. 6307.

United States District Court,
S. D. New York.

March 24, 1980.

Irving L. Gartenberg, New York City, for plaintiff; Ira M. Schulman, New York City, of counsel.

Cahill, Gordon & Reindel, New York City, for defendant Peat, Marwick, Mitchell & Co.; William E. Hegarty, Stacy J. Haigney, and Leonard P. Novello, Associate Gen. Counsel, Peat, Marwick, Mitchell & Co., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

The defendant, Peat, Marwick, Mitchell & Co. ("PMM") moves to dismiss the plaintiff's third amended complaint which alleges violations by PMM of the federal securities laws as well as common law claims arising out of PMM's accounting services rendered to Systems for Advanced Information Inc. ("SAI") in connection with the purchase in April 1972 by plaintiff, Gilman Brothers Inc., of a majority stock interest in SAI from the individual defendants herein, Burrows and McLaughlin and from unnamed third parties. In very broad outline, plaintiff alleges that Burrows and McLaughlin, who were officers and directors of SAI at the time of plaintiff's purchase of the shares, converted more than $72,000 of SAI's assets during and prior to 1971, 1972 and 1973 through false expense

vouchers, the receipt by them of unauthorized "consulting fees," double payment of expenses, and by other means which were part of a scheme to defraud plaintiff in violation of Section 10(b) of the Securities Exchange Act of 1934[1] and Rule 10b–5 promulgated thereunder,[2] and of Section 17(a) of the Securities Act of 1933[3] in connection with the purchase by plaintiff of the SAI shares. The thrust of the charges against PMM is that it aided and abetted the wrongful conduct of Burrows and McLaughlin, among other means, by the certification and issuance of March 31, 1971 and March 31, 1972 financial statements and an unaudited statement for a 10-month period ending on January 31, 1972 and covering up Burrows' and McLaughlin's alleged scheme to defraud in that the aforesaid statements contained affirmative misrepresentations and omissions of material facts as to their alleged fraudulent scheme and SAI's financial condition. Plaintiff further alleges that in reliance upon the PMM certification of the March 31, 1971 financial statement and the January 31, 1972 unaudited statement it was induced to enter into the agreement for the purchase of the shares of stock.[4] For the purposes of this motion, the allegations of the complaint must be accepted as true.

■ PMM's motion to dismiss the securities fraud claims on the ground that they are time barred brings into play the Massachusetts statute of limitations which the parties agree is the applicable statute.[5] When the stock purchase transaction was consummated on April 13, 1972, the Massachusetts statute of limitations for miscellaneous tortious acts provided for a two-year limitation period and it applied to securities fraud actions.[6] Since the action was not commenced until December 1977, the action would have been time barred. But, plaintiff contends, and for the purpose of this motion defendant accepts, that it did not come into possession of the information upon which it predicates its claims until July 31, 1975, and thus under the federal tolling doctrine which applies,[7] it is this date from which the applicable statute commences to run.

In 1973 the two-year limitation period was extended to three years by the Massachusetts Legislature[8] which was in effect in July 1975 when plaintiff discovered the facts upon which it bases it claims. However, the amending act explicitly states that the three-year period applies to "causes of action *arising* on and after" January 1st, 1974 (emphasis supplied).

■ At issue is which version of the statute—the three-year period for post-1974 actions or the two-year period for pre-1974 actions—applied to this action when the statute of limitations commenced to run in July 1975. If it is the two-year term, plaintiff's claims are barred since the commence-

1. 15 U.S.C. § 78j(b).

2. 17 C.F.R. § 240.10b–5.

3. 15 U.S.C. § 77q(a).

4. The March 31, 1972 statement was issued after the purchase was consummated but plaintiff alleges that in reliance thereon it was induced to retain the purchased shares and to make additional advances of funds in order to protect its investment.

5. Federal law, in the absence of a limitation period in the securities statute upon which a plaintiff's claim is based, applies state statutes of limitations for actions based upon common law fraud. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 n.29, 96 S.Ct. 1375, 1389 n.10, 47 L.Ed.2d 668 (1976); *Phillips v. Levie*, 593 F.2d 459, 462 (2d Cir. 1979); *Stull v. Bayard*, 561 F.2d 429, 431 (2d Cir. 1977), *cert. denied*,

434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978); *Arneil v. Ramsey*, 550 F.2d 774, 779 (2d Cir. 1977). The stock purchase was consummated in Massachusetts, the state of plaintiff's residence.

6. Mass.Gen.Laws ch. 260, § 2A; *Cook v. Avien, Inc.*, 573 F.2d 685, 694 (1st Cir. 1978); *Janigan v. Taylor*, 344 F.2d 781, 783 (1st Cir.), *cert. denied*, 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965).

7. *Stull v. Bayard*, 561 F.2d 429, 432 (2d Cir. 1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978); *Arneil v. Ramsey*, 550 F.2d 774, 780 (2d Cir. 1977); *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1875).

8. Mass.Gen.Laws ch. 260, § 2A, as amended by Mass.Acts 1973, ch. 777 § 1.

ment of its action in December 1977 was more than two years after the discovery of the alleged fraud; if it is the three-year period, then it was timely commenced by at least six months.

More precisely, the basic issue is when did the plaintiff's claims "arise"? The defendant contends that this was in April 1972 when the transaction for the sale of the stock was consummated as plaintiff alleges in reliance upon financial statements issued by PMM. The plaintiff, on the other hand, contends that its cause of action "accrued" in July 1975 when it ascertained the underlying facts of the alleged fraudulent conduct of the defendants. Our Circuit has held that such a claim arises when the deception is practiced and plaintiff is allegedly injured thereby.[9] More recently the Court reiterated that "normally a cause of action for fraud arises when the contract or transaction in which the loss occurs is executed."[10] If plaintiff was injured by the alleged wrongful conduct, it sustained the injury on the date of the contract when it paid for the overvalued stock by reason of claimed fraudulent conduct attributed to the defendant.[11] The two-year statute which was then in effect applies and the fact that it was tolled until July 1975 did not give plaintiff the benefit of the amended three-year statute which became effective during the tolling period and was applicable to claims arising after January 1, 1974.

The Supreme Judicial Court of Massachusetts has spoken directly to this issue. In *Nantucket v. Beinecke*,[12] the Court upheld a lower court decision to apply the two- rather than the three-year statute on the ground that, although the action was commenced after January 1, 1974, the tortious conduct upon which it was based occurred prior to the effective date of the amendment.[13] The Court then addressed itself to the separate issue of when the plaintiff could be charged with the knowledge and considered elements material to the tolling period issue to ascertain when the two-year period commenced to run. Thus the opinion makes clear that the appropriate date which determines the applicable statute is when the plaintiff, with assumed knowledge of the fraudulent wrong, could have first asserted its claim.[14]

With the tolling period ended in July 1975, the two-year statute began to run and since plaintiff did not commence suit within that period but in December 1977, plaintiff's securities fraud claims are time barred and, accordingly, the defendant's motion to dismiss them is granted. Plaintiff's claim that defendant is estopped from pleading the statute of limitations is without substance. Apart from the fact that it is advanced upon conclusory statements set forth in counsel's brief, it is without legal support. All the unspecified actions of PMM upon which the plea is based occurred prior to July 1975 (in fact it is asserted they

9. See Stull v. Bayard, 561 F.2d 429 (2d Cir. 1977), cert. denied, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978).

10. duPont v. Haskins & Sells, 607 F.2d 995 (2d Cir. 1979); see also Rice v. Baron, 456 F.Supp. 1361, 1368 (S.D.N.Y.1978); Dynamics Corp. of America v. International Harvester Co., 429 F.Supp. 341, 355 (S.D.N.Y.1977).

11. Defendant's statement pursuant to local Rule 9(g) states plaintiff's ". . . injury occurred on or about April 13, 1972 when the stock purchase at issue was consummated. . . . ." Plaintiff has not controverted this statement and hence, under the Rule it is deemed admitted.

12. 398 N.E.2d 458 (Mass.1979).

13. See also Sleeper v. Kidder, Peabody & Co., Inc., 480 F.Supp. 1264 (D.Mass.1979).

14. Cf. Stull v. Bayard, 561 F.2d 429, 432 (2d Cir. 1977), cert. denied, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978); see also Rice v. Baron, 456 F.Supp. 1361, 1368 (S.D.N.Y.1978) (the statute of limitations begins to run from the time when plaintiff first suffered a loss as a result of defendant's fraudulent conduct, that is when plaintiff, with assumed knowledge of the wrong, could have first asserted a claim for relief); Dynamics Corp. v. International Harvester Co., 429 F.Supp. 341, 355 (S.D.N.Y.1977) (where this Court stated when parties have entered into a formal written document "the cause of action [for fraud] accrues when the document is executed and when the party alleging fraud has given consideration and thus suffered damages")

continued into April 1975). Since admittedly plaintiff was fully aware of the facts upon which its claims are based by July 1975 and was in a position to commence its action at that time, the estoppel plea is without force.[15] The other claims are based upon state common law and likewise are dismissed under *United Mine Workers v. Gibbs*.[16] This disposition makes it unnecessary to consider defendant's alternative motions made under Rules 12(b)(6) and 9.

So ordered.

---

**15.** *Renz v. Beeman*, 589 F.2d 735, 751 (2d Cir. 1978), *cert. denied,* 444 U.S. 834, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979).

**16.** 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).