**HARRY RICH CORPORATION, Florida Carpet Corporation, Carpet Service Corporation, Plaintiffs,**

v.

**CURTISS–WRIGHT CORPORATION, Reeves Brothers, Inc., Defendants.**

United States District Court
S. D. New York.
Sept. 4, 1964.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for plaintiffs; Paul Martinson, George Berger and Harold Klapper, New York City, of counsel.

Hahn, Hessen, Margolis & Ryan, New York City, for defendant Reeves Bros.; Francis J. Ryan, Jr., and Harold Sommers, New York City, of counsel.

TYLER, District Judge.

Plaintiff corporations, sellers and distributors of floor covering linings, have brought this action for fraud and breach of warranty against two manufacturers of an under-rug matting sold under the name of "Curon Carpet Cushion" or "Curon". Until on or about November 9, 1960, Curon was manufactured and sold to plaintiffs by the Curon Division of defendant Curtiss-Wright Corporation ("Curtiss-Wright"). On or about that date, the entire division as an operating entity was taken over by defendant Reeves Brothers, Inc. ("Reeves"), which thereafter became the sole manufacturer and seller of Curon to plaintiffs. Plaintiffs allege that they purchased some $376,516.04 worth of Curon from Curtiss-Wright, and another $20,654.59 worth from Reeves.

This is a motion by plaintiffs to disqualify the attorneys of record for Reeves from continuing to act in this litigation. The motion is based upon abortive contacts between plaintiffs and the attorneys for Reeves while plaintiffs were seeking trial counsel for this action. Plaintiffs contend that an attorney-client relationship was established pursuant to which various documents and other information concerning plaintiffs' claim were divulged to counsel in question. Defendant Reeves contends that no attorney-client relationship was established; that even if such were established plaintiffs were made aware of and consented to representation by the firm which also represented Reeves; and that, in any event, no confidential matters were revealed by plaintiffs in the course of these communications or discussions with counsel.

More particularly, plaintiffs state that they initially sought New York counsel to maintain an action against Curtiss-Wright only. Their introduction to and communications with Reeves' present lawyers were made through their Florida attorney, Harold Tannen, Esq., and the president of plaintiff Harry Rich Corporation, Harry Rich.

By affidavit, Harry Rich avers that:

"Prior to June 1962 I called Francis J. Ryan, Jr., Esq. of Hahn, Hessen, Margolis & Ryan * * * as to whether he or his firm would represent us in the prosecution of our claims growing out of the sales to us of defective Curon by Curtiss-Wright. During these telephone calls I informed Mr. Ryan of the nature and the facts involved in our dispute with Curtiss-Wright. He did not, during these conversations, mention to me that his firm represented Reeves. In any event, we at that time had no adequate basis or desire to proceed against Reeves (Curtiss-Wright's successor)."

It is conceded by both parties that in June, 1962, plaintiffs' Florida attorney, Tannen, telephoned Ryan and was told by Ryan that the latter's firm was employed on a general retainer basis by Reeves. It is also conceded that after this conversation Ryan sent Tannen a letter dated June 15, 1962 confirming this Reeves retainer and stating that though he found no apparent conflict of interest, his firm would require the approval of Reeves before becoming involved in the matter. Curiously, the letter contains no indication of any prior direct communication between Rich and Ryan.

Ryan deposes that he had no communication with Rich prior to the Tannen telephone call.

In my view, this conflict in the Rich and Ryan affidavits must be resolved in order to properly apply the canons and settled rules of which both sides are well aware.

It is possible, of course, to conceive of a situation where a lawyer with a disclosed retainer from client Smith nevertheless should properly refrain from representing Smith in a specific matter because, with respect to the latter and upon the assumption that Smith would not be involved therein, counsel entered into an attorney-client relationship with Jones and received confidential

information from him, only to learn thereafter that Jones' position was adverse to that of Smith. In such a hypothetical situation, considerations of fairness and reconciliation of the canons and rules would require, it seems to me, a reasonable showing that the disclosures by Jones were indeed confidential.[1] Parenthetically, if it could be assumed that the present controversy fits this hypothetical category, I would doubt that the materials sent by Rich to Ryan could be practically described as confidential disclosures.[2]

■ A second situation, however, can be envisioned wherein information is disclosed by Jones, who is either actually or potentially a client but is not, for whatever reason, informed by counsel of the latter's general retainer by Smith whose interests in the particular matter may possibly conflict with his own. In such an instance, a disclosure by Jones, no matter how innocuous and irrespective of availability of the same information from outside sources, should preclude counsel from representing Smith in the particular matter.[3]

In the first situation, then, the client has been fairly warned, and if he nevertheless elects to proceed, he must accept the consequences, absent a showing of other considerations of equity and fair dealing. In the second case, the client is entitled to regard counsel as unswervingly dedicated to his cause, i. e., as in the normal attorney-client relation with him, even if no financial arrangements have been made between them, and even if the lawyer has not definitely agreed to take the matter. In the interest of promoting public confidence in the attorney-client relationship, any disclosure, no matter how trivial, and whether or not of information otherwise easily obtainable, will be sufficient to disqualify counsel from acting further.

Which category this matter falls into depends at least in significant part upon whether Rich made disclosures to Ryan on several occasions before Ryan told Rich's attorney of the possible conflict of interests. Rich says that he did; Ryan says that he did not. In an important and delicate area of this kind, it seems appropriate and desirable for the court to obtain further information from the parties. This observation, however, should not permit the parties to assume that Mr. Rich will necessarily be required to divulge any matters which he or his advisers may reasonably regard as confidential. This and other nice questions may be safely left to a further hearing which is set down for 4:00 p. m. on September 22, 1964 in Suite 2903 of the court house. So ordered.

1. Cf. Canon 6 of the Canons of Professional Ethics of both the New York and the American Bar Associations, adopted under General Rule 5(b) (4) of this court, to the effect that:
  "It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts."

2. The documents which were turned over several months after the Tannen telephone call, consisted of correspondence and memos exchanged by plaintiffs and defendant Curtiss-Wright, a partial tabulation of plaintiffs' claims drawn therefrom, and a trade-brochure on Curon issued by defendant Curtiss-Wright.

3. Cf. T. C. Theatre Corp. v. Warner Bros. Pictures Corp., 113 F.Supp. 265 (S.D. N.Y.1953); Canon 37 of the Canons of Professional Ethics of both the New York and the American Bar Associations, adopted under General Rule 5(b) (4) of this court:
  "It is the duty of a lawyer to preserve his client's confidence. This duty outlasts the lawyer's employment, and extends as well to his employees; and neither of them should accept employment which involves or may involve the disclosure or use of these confidences, either for the private advantage of the lawyer or his employees or to the disadvantage of the client, without his knowledge and consent, and even though there are other available sources of such information. A lawyer should not continue employment when he discovers that this obligation prevents the performance of his full duty to his former or to his new client."