**ESTATES THEATRES, INC., Plaintiff,**

v.

**COLUMBIA PICTURES INDUSTRIES, INC., et al., Defendants.**

**No. 71 Civ. 347.**

United States District Court, S. D. New York.

July 17, 1972.

Joseph A. Ruskay, New York City, for plaintiff.

Schwartz, Mermelstein, Burns, Lesser & Jacoby, New York City, for defendants, Columbia Pictures Industries, Inc. and Columbia Pictures Corp.; John L. Amabile, of counsel.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for defendants Paramount Pictures Corp., Paramount Pictures, Inc. and United Artists Corp.; George Berger, New York City, of counsel.

Royall, Koegel & Wells, New York City, for defendant Twentieth Century-Fox Film Corp.

Davis, Polk & Wardwell, New York City, for defendant Metro-Goldwyn-Mayer, Inc.; Henry L. King, New York City, of counsel.

Harry B. Swerdlow, Beverly Hills, Cal., for defendants Cinerama, Inc. and Cinerama Releasing Corp.

Daniel Loventhal, New York City, for defendant Marvin Films, Inc.

William Gold, New York City, for defendants Interboro Circuit, Inc. and Interboro Management, Inc.

Zalkin & Cohen, New York City, for defendants Century Circuit, Inc. and Combined Century Theatres, Inc.; Paul J. Harriton, New York City, of counsel.

EDWARD WEINFELD, District Judge.

█ Plaintiff, owner and operator of the Utopia, a motion picture theatre in Flushing, Queens, commenced this action against various distributors of motion pictures and theatre owners, charging a conspiracy in violation of the antitrust laws. It now moves for leave to issue a supplemental complaint and to add defendants to those originally named as co-conspirators upon an allegation that since the commencement of the action the proposed defendants have joined and participated in the claimed conspiracy. The motion, while not opposed on the merits, was countered by allegations by attorneys for various defendants that the plaintiff's attorney herein also represented litigants in other actions pending in this court, in violation of Disciplinary Rule (DR) 5–105(B) of the Code of Professional Responsibility,[1] which provides:

"A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(C)."

The latter section provides:

"In the situations covered by DR 5–105 . . . (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his inde-

---

1. ABA Code of Professional Responsibility, DR 5–105(B). Adopted by N.Y. State Bar Ass'n eff. Jan 1, 1970 and reprinted in N.Y. Judiciary Law App. at 55–98 (McKinney Supp. 1971). While the Code does not have the force and effect of a statute, it is recognized by bench and bar as setting forth proper standards of professional conduct. *See* E. F. Hutton & Co. v. Brown, 305 F.Supp. 371, 377 n. 7 (S.D.Tex.1969) and cases cited therein. *See also* General Rules of Unit-

ed States Dist. Ct. for the Southern District of New York, Rules 3(a) and 5(f). Put somewhat differently, it may be said that the power of a court to enforce the Code is founded on its supervisory power over members of the bar. *See* Richardson v. Hamilton Int'l Corp., 333 F. Supp. 1049, 1052 (E.D.Pa.1971); Empire Linotype School, Inc. v. United States, 143 F.Supp. 627, 631 (S.D.N.Y. 1956).

pendent professional judgment on behalf of each."

Accordingly, the defendants urge that before the instant motion is granted the Court determine the issue of conflict of interest raised under the Code of Professional Responsibility.

The facts with respect to the matter as presented to the Court are as follows. Plaintiff's attorney is Joseph A. Ruskay. He also represents United Artists Theatre Circuit, Inc. (hereafter UATC), plaintiff in two consolidated actions pending in this court since 1953, wherein various defendants are charged with violations of the antitrust laws in the New York metropolitan area in the distribution and exhibition of motion picture films—a claim not unlike that made by plaintiff in this action. UATC, through one of its subsidiaries, operates the Roosevelt Theatre, located in Flushing, Queens, where plaintiff operates its Utopia Theatre, allegedly the object of discriminatory conduct violative of the antitrust laws charged to the defendants herein. Plaintiff has not named UATC a defendant in this action, although it charged, in answer to an interrogatory, that UATC is a co-conspirator.

At or about the filing of the instant motion for leave to file its supplemental complaint, plaintiff sent a letter, drafted under the supervision of Mr. Ruskay, to some of the defendants, the facts of which are said to be the predicate of the present motion, as follows:

"[Y]ou have discriminated and continue to discriminate against the Utopia and improperly granted favored treatment to other theatres . . . . These patterns of conduct . . . have involved the following types of discrimination among others:—

. . . .

"(c) The licensing of pictures to the Main Street and/or *Roosevelt* (recently reopened as the Quartet I–IV theatres in Flushing) and/or Parsons Theatres on intermediate runs after first run Queens, and not permitting the Utopia to exhibit these pictures on the same availability; or not permitting the Utopia to exhibit said pictures on such availability unless it was willing to bid against the above theatres; notwithstanding the fact that the Utopia was not and is not in substantial competition with such theatres and for years the Utopia had exhibited pictures on the same availability as the Main Street, *Roosevelt*, Parsons and other theatres now being granted such favored playing positions." [emphasis supplied]

Upon the factual allegations it appears that the interests of the Utopia and Roosevelt theatres, respectively owned by different clients of Mr. Ruskay, are antagonistic—that defendants in this suit allegedly are discriminating in favor of one of Mr. Ruskay's clients, to the detriment of the other. It is contended that should plaintiff (operator of the Utopia) prevail in this action, it would be entitled to a decree in equity against all the defendants, requiring them to cease and desist from any illegal conduct which favors the Roosevelt, owned by Mr. Ruskay's other client. It is further urged that the naming of UATC as a co-conspirator, although it is not named as a defendant, has sharpened the antagonism.

The conflict of interest issue has been accentuated by an antitrust suit commenced by the government against UATC after the instant suit was filed. The government suit, brought under section 7 of the Clayton Act, charges that large motion picture theatre circuits, including UATC, have advantages over smaller theatre circuits and individual theatres in competing for exhibition licenses from distributors. UATC, which acquired another circuit, accounted for approximately 27.5% of all motion picture theatres in Queens County in the year 1968. The government alleges that the effect of the acquisition may be to substantially lessen competition or tend to create a monopoly in various ways, including that UATC's bargaining power with motion picture distributors has been significantly advanced to the detri-

ment of smaller theatre circuits and individual theatres with which it competes for licenses to exhibit feature motion pictures. Mr. Ruskay does not represent UATC in the government's antitrust suit. However, it is urged that, as plaintiff's attorney in the instant case, to support its claim he would necessarily be required to offer evidence that the Roosevelt, as one of the theatres operated by UATC, was the beneficiary of unlawful conduct at the expense of plaintiff, his other client. Additionally, it is contended that any evidence unearthed by plaintiff in this action which may show possible involvement of UATC in unlawful conduct in Queens County would be helpful to the government in the prosecution of its case and correspondingly detrimental to UATC in its defense of that suit.[2]

Upon the facts, Mr. Ruskay appears to be involved in a conflict of interest in representing both the plaintiff herein and UATC as plaintiff in its consolidated antitrust suits. However, upon the return of the motion, he presented an affidavit of the principals of plaintiff, who averred in substance that when they retained Mr. Ruskay he had advised them of his representation of UATC and of all the pertinent facts, and that UATC was not named as a defendant in this action with their approval. They further expressed a desire that he continue to act as plaintiff's attorney. In addition, upon the argument of this motion Mr. Ruskay stated that prior to the commencement of this action he had ob-

tained the consent of UATC's general counsel, evidently in compliance with DR 5–105(C) of the Code of Professional Responsibility, referred to above. However, no written consent, as in the instance of the plaintiff herein, was submitted. Moreover, the asserted oral consent of UATC's general counsel had been obtained prior to the naming of UATC as a co-conspirator and to the commencement of the government antitrust suit against it. Accordingly, Mr. Ruskay was afforded an opportunity to submit the written consent of UATC. It has not been presented. Instead, Mr. Ruskay has advised that UATC would not consent to his continuing to represent the plaintiff in this case; also that UATC's general counsel "emphasized when he and his client gave their original consent to my [Ruskay's] representing the plaintiff here, he [general counsel] had been advised not only that his client was not being joined as a defendant, but that United Artists' Roosevelt Theatre was in no wise involved in any alleged conspiracy; whereas the latter assumption had, according to his view, proved to be incorrect."[3]

In sum, UATC's position is that it does not consent to Mr. Ruskay's continued representation of plaintiff since the latter accuses UATC of being a member of an antitrust conspiracy directed against plaintiff.[4] Seemingly, the issue appears to be resolved by UATC's refusal to consent; however, Mr. Ruskay contends there is no conflict of interest and that he should be permit-

2. Counsel for the defendants, although not general counsel for UATC, also claim that a question exists of whether Mr. Ruskay, by virtue of his representation of plaintiff in the instant action, is placed in a position in which he may be called upon to employ confidential information obtained by him in the course of his representation of UATC. In view of this Court's disposition, however, there is no need to reach that question.

3. A controversy now exists between Mr. Ruskay and general counsel to UATC as to whether Mr. Ruskay, when he originally sought and obtained the consent of UATC, had promised not only not to

include UATC as a defendant, but not to name it or treat it as a co-conspirator. General counsel now claims the naming of UATC as a co-conspirator was in contravention of his understanding with Mr. Ruskay, which the latter in turn denies.

4. At a further hearing conducted by this Court, at which UATC's general counsel appeared, he urged that Mr. Ruskay be held disqualified from representing Estate Theatres, Inc. and that he not be permitted to withdraw from his representation of UATC in the consolidated action. *See* note 15 *infra*.

ted to continue to represent plaintiff herein and also UATC in its consolidated actions. Preliminarily, he challenges that the defendants in this action have standing to raise the conflict of interest question—that UATC, which may be injured by his continued representation of both, is the only one who can raise the issue. I do not agree. What is involved is a matter of public interest involving the integrity of the Bar.[5] When the propriety of professional conduct is questioned, any member of the Bar who is aware of the facts which give rise to the issue is duty bound to present the matter to the proper forum, and a tribunal to whose attention an alleged violation is brought is similarly duty bound to determine if there is any merit to the charge.[6] The issue having arisen here on plaintiff's motion, those attorneys representing other parties to the litigation were obligated to report the relevant facts to the Court for its determination. Indeed, the Code of Professional Responsibility mandates such action:

"A lawyer possessing unprivileged knowledge of a violation of DR 1–102 shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation."[7]

We next consider Mr. Ruskay's contention that there is no conflict of interest—a contention somewhat different from that advanced on the argument of this motion when he claimed he had the consent of UATC to represent plaintiff herein. Actually his present position is that there is no *substantial* conflict of interest. The basis of this rather finely drawn distinction is that the consolidated actions wherein he represents UATC cover a period from 1929 to 1953,[8] whereas in the instant suit the alleged unlawful conduct of which the Roosevelt was one of the beneficiaries covers a period from 1969–1972; hence, Mr. Ruskay argues that any facts relating to plaintiff's claim would, insofar as the government's antitrust suit against his other client, UATC, be only of marginal relevance, if any, and insubstantial. He makes a further contention that even if the facts developed in this case, or the testimony of witnesses should provide ammunition to the government in support of its case against UATC, it would be irrelevant as far as his representation of UATC is concerned with respect to the Roosevelt Theatre and its activities during the 1929–1953 period; in this instance he emphasizes that he *does* not represent UATC in the government's suit against it, which charges, among other claims, wrongful conduct to UATC in Queens County for a period subsequent to 1968 and down to date. I cannot accept the rather fine distinction which Mr. Ruskay seeks to establish—in effect to measure the impact of the conflict upon his client's interests. Once a conflict of interest ap-

5. In Consolidated Theatres, Inc. v. Warner Bros. Circuit Management Corp., 216 F.2d 920, 926 (2d Cir. 1954), the court stated that "the American Bar Association, as also the courts throughout the country which have incorporated the Canons into their rules of court, were primarily concerned for the public good . . . . [T]he Canons must be viewed . . . [as a] codification of the more important limitations on legal practice broadly demed necessary for the protection of clients." *Cf.* Fleischer v. Phillips, 264 F.2d 515, 516 (2d Cir.), cert. denied, 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030 (1959).

6. Empire Linotype School, Inc. v. United States, 143 F.Supp. 627, 631 (S.D.N.Y. 1956); *see also* Marco v. Dulles, 169 F.Supp. 622, 632–633 n. 7 (S.D.N.Y.), appeal dismissed, 268 F.2d 192 (2d Cir. 1959); Fleischer v. A.A.P., Inc., 163 F.Supp. 548, 559 (S.D.N.Y.1958), appeal dismissed sub nom. Fleischer v. Phillips, 264 F.2d 515 (2d Cir.), cert. denied, 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030 (1959); United States v. Standard Oil Co., 136 F.Supp. 345, 351 n. 6 (S.D. N.Y.1956).

7. ABA Code of Professional Responsibility DR 1–103. Adopted by N.Y. State Bar Ass'n eff. Jan. 1, 1970 and reprinted in N.Y. Judiciary Law App. at 55–98 (McKinney Supp.1971).

8. Counsel have attributed the prolonged pendency of that action to a hiatus caused by the death of one of the principals.

pears from the facts, and where the matters embraced in the pending action are substantially related to those in the other actions, the law will not inquire into the force of the impact or its potential damage. For the Court to do so would require it to speculate as to the course a litigation would take and would tend to undermine the confidence of clients that their counsel would be constant in their loyalty to their interests, a confidence essential to our adversary legal process.[9] This parallels the rule that once the attorney-client relationship is established, the courts will not inquire into the nature of the privileged communications entrusted to the attorney by the client to determine whether disclosure would adversely affect the former client's interest.[10] As already stated, considerations of public policy, no less than the client's interests, require rigid enforcement of the rule against dual representation where one client is likely to be adversely affected by the lawyer's representation of another client and where it appears he cannot exercise independent judgment and vigorous advocacy on behalf of the one without injuring the interests of the other. A lawyer should not be permitted to put himself in a position where, even unconsciously he will be tempted to "soft pedal" his zeal in furthering the interests of one client in order to avoid an obvious clash with those of another,[11] at least in the absence of the express consent of both clients.[12] Such is the case here. Plaintiff, the owner of the Utopia, has charged that UATC is a co-conspirator with the named defendants in this case; accordingly, if Mr. Ruskay is to serve plaintiff with fidelity he would be required to inquire into and expose all the facts as to the alleged favored licensing of the Roosevelt by the defendants at the expense of the Utopia. Were he to fail to do so, in order to protect the UATC, which owns the Roosevelt, he would be disloyal to plaintiff's interest; such a "cover-up" to protect the Roosevelt Theatre would be an intolerable violation of professional responsibility. The attorney cannot at one and the same time be the prosecutor of plaintiff's claim on behalf of Utopia and the defender of the target, UATC, as the owner of the Roosevelt.[13] To allow such conflicting positions under the facts here presented would impair the confidence and respect of the community towards its bench and bar.[14]

■ Since it is clear that UATC is the client likely to be injured by the dual representation, it, as well as the defendants herein, urge that Mr. Ruskay be required to forego his representation of plaintiff. Mr. Ruskay, however, contends that the choice of which client he will continue to represent rests with him and he opts for the plaintiff over the opposition of UATC, which, as already indicated, desires that he remain as its

9. *Cf.* In re Quimby, 123 U.S.App.D.C. 273, 359 F.2d 257 (1966) (per curiam).

10. *See* T. C. Theatre Corp. v. Warner Bros. Pictures Corp., 113 F.Supp. 265, 268–269 (S.D.N.Y.1953). *Accord,* American Can Co. v. Citrus Feed Co., 436 F.2d 1125, 1128 (5th Cir. 1971); Consolidated Theatres, Inc. v. Warner Bros. Circuit Management Corp., 216 F.2d 920, 924–925 (2d Cir. 1954).

11. *See* Yablonski v. United Mine Workers, 145 U.S.App.D.C. 252, 448 F.2d 1175, 1179 (1971) (per curiam); Fleischer v. A.A.P., Inc., 163 F.Supp. 548, 553 (S.D.N.Y.1958), appeal dismissed sub nom. Fleischer v. Phillips, 264 F.2d 515 (2d Cir.), cert. denied, 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030 (1959); *cf.* Von Moltke v. Gillies, 332 U.S. 708, 725–726, 68 S.Ct. 316, 324, 92 L.Ed. 309 (1948). "Undivided allegiance and faithful, devoted service to a client are prized traditions of the American lawyer."

12. In re Trinidad Corp., 229 F.2d 423, 430 (2d Cir. 1955).

13. UATC's general counsel has already charged that testimony on deposition given by one of the plaintiff's representatives is detrimental to UATC in that it would be useful to the government in its antitrust suit. [Ruskay's affidavit, p. 10.]

14. *Cf.* In re Westmoreland, 270 F.Supp. 408, 410–411 (M.D.Ga.1967).

lawyer in the consolidated actions.[15] I do not agree that the decision rests with Mr. Ruskay. The Code of Professional Responsibility, as well as decisional law, decrees otherwise. Ethical Consideration (EC) 2–32 provides:

"A decision by a lawyer to withdraw should be made only on the basis of compelling circumstances . . . ."

DR 2–110, in relevant part, provides:

"(C) Permissive withdrawal.

"[A] lawyer may not request permission to withdraw in matters pending before a tribunal, and may not withdraw in other matters, unless such request or such withdrawal is because:

. . . .

"(2) His continued employment is likely to result in a violation of a Disciplinary Rule."

Since Mr. Ruskay's representation of both clients under the circumstances here presented would constitute a violation of a Disciplinary Rule, the above-quoted DR provision comes into play. The Rule itself does not vest the choice of withdrawal in the lawyer—to so construe it would do violence to its spirit and purpose. Mr. Ruskay has represented UATC for many years in the consolidated actions, long prior to his retainer by plaintiff herein. To permit him to choose to withdraw from his representation of his first client and to continue as attorney for the second, whose interests are antagonistic to the first, would nullify the objective of the Rule. While in fairness to Mr. Ruskay it may be stated that he has acted in good faith[16] (and UATC so acknowledges), to construe the Rule so that the lawyer decides which client he will continue to represent where a conflict of interest appears could create a situation where an attorney who finds it onerous and unprofitable to continue a representation could be lured away by a retainer from a second client whose interests are adverse to the first.

■ The fact that Mr. Ruskay, although aware of the potential conflict, accepted the retainer of plaintiff and has expended considerable time and effort in that endeavor, for which he may not be fully compensated, can lead to no different result; it must give way to the principle that a lawyer may not relieve himself of an unfinished representation to the detriment of the client except for reasons of honor or self respect.[17] Moreover, the second client, plaintiff herein, similarly had notice of the potential conflict and cannot be heard to complain of the consequences to it of the disqualification of its attorney.[18] In the circumstances, Mr. Ruskay cannot continue to represent the plaintiff. If he desires to withdraw as UATC's counsel, an application may be made in accordance with the Rules,

15. At the further hearing, general counsel stated: "He [Mr. Ruskay] has worked for our client for many, many years on one major anti-trust case, we desire him to continue to work on that case very emphatically, because he is a repository of tremendous knowledge and information with respect to old files, records and dealings which would be extremely difficult to duplicate. We desire good relations with Mr. Ruskay, we have always had good relations with Mr. Ruskay, and I speak of that personally as well as our client. Nonetheless, we just find it impossible in light of the facts as the facts stand to say we consent because we cannot consent, and our client's position is that given these facts [it] cannot consent." [SM 15–16.]

16. While Mr. Ruskay sought to obtain the consent of both clients, a lawyer, however, "should avoid not only situations where a conflict of interest is actually presented, but also those in which a conflict is likely to develop." H. Drinker, Legal Ethics 105 (1953).

17. See United States v. Anonymous, 215 F.Supp. 111 (E.D.Tenn.1963) ; see also United States v. Crespo, 398 F.2d 802 (2d Cir. 1968) ; Lovvorn v. Johnston, 118 F.2d 704 (9th Cir.), cert. denied, 314 U.S. 607, 62 S.Ct. 92, 86 L.Ed. 488 (1941) ; El Morro Food Distribs., Inc. v. W. M. Tynan & Co., 223 F.Supp. 717 (S.D.N.Y.1963).

18. See Harry Rich Corp. v. Curtiss-Wright Corp., 233 F.Supp. 252 (S.D.N.Y.1964).

where any remaining issues may then be resolved.

The motion for leave to serve a supplemental complaint is granted.