**Pedro MUNIZ, et al., Plaintiffs,**

v.

**RE SPEC CORP. et al., Defendants.**

16–CV–02878 (BCM)

United States District Court,
S.D. New York.

Signed 01/19/2017

---

Shawn Raymond Clark, Michael Antonio Faillace, Michael Faillace & Associates, P.C., New York, NY, for Plaintiffs.

Ira Burton Pollack, Law Office of Ira B. Pollack & Associates, PLLC, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

BARBARA MOSES, United States Magistrate Judge.

In this wage and hour case, before me for all purposes pursuant to 28 U.S.C. § 636(c), nine food service workers assert claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (FLSA), and New York Labor Law §§ 190 *et seq.* and 650 *et seq.* (NYLL), against the owners and operators of the restaurants where they were formerly employed. Defendants have moved to disqualify plaintiffs' counsel, Michael Faillace, Esq. and the law firm of Michael Faillace & Associates, P.C. (the Firm), and to dismiss the First Amended Complaint. Defendants contend that the Firm has a conflict of interest because, in addition to the hourly workers named as plaintiffs in the First Amended Complaint, it also represents the former day manager of one of defendants' restaurants, who is potentially liable as an "employer" for any wage and hour violations and therefore should be aligned with defendants, not plaintiffs. For the reasons set forth below, both branches of the motion are DENIED.

## BACKGROUND

Plaintiffs Pedro Muniz and Octavio Gonzalez, represented by the Firm, commenced this action on April 18, 2016, alleging that their former employers Re Spec Corp d/b/a Jackson Hole (Re Spec), 3K Foods Inc. d/b/a Jackson Hole (3K Foods), George Kalogeras, Thomas Kalogeras, Dimitri Kalogeras, Liliana Kalogeras, and Stelio Kalogeras violated the minimum wage, overtime, spread-of-hours, and recordkeeping provisions of the FLSA and NYLL. Compl. (Dkt. No. 1), ¶¶ 1–11, 16–25. Muniz and Gonzalez alleged that they worked "as sandwich makers and waiter" at two New York City restaurants operated by defendants under the name Jackson Hole, one on Madison Avenue and one on Columbus Avenue. Compl. ¶¶ 2–4, 39, 63. They further alleged that the individual defendants were "owners, managers, principals or agents" of the two corporate defendants. *Id.* ¶ 3; *see also id.* ¶¶ 21–25.

On September 30, 2016, original plaintiff Muniz, joined by additional plaintiffs Alejandro Mendoza Jimenez, Armando de Jesus Sontay, Ismael Morales, Lucio Flores, Raul Sanchez Rufino, Rigoberto Andres Juarez, Teofilo Mendez, and Eustolio Aquino—but not original co-plaintiff Gonzalez—filed their First Amended Complaint, once again asserting wage and hour claims against Re Spec, 3K Foods, and George, Thomas, and Dimitri Kalogeras. *See* First Am. Compl. (Dkt. No. 38), ¶¶ 1–14.[1] The current plaintiffs allege that they worked as "sandwich makers, food preparers, cooks, delivery workers, and waiter" at the Jackson Hole restaurants. *Id.* ¶¶ 4, 10. The First Amended Complaint, like the original Complaint, alleges violations of the minimum wage, overtime, spread-of-hours, and recordkeeping provisions of the FLSA and NYLL. *Id.* ¶¶ 13–14.

On October 13, 2016, defendants filed the instant motion (Dkt. No. 41), arguing

---

1. Plaintiffs originally sued the individual defendants as George, Thomas, Dimitri, Liliana and Stelio "Kalogera." Liliana and Stelio were dropped from the First Amended Complaint, leaving only George, Thomas and Dimitri as defendants. These defendants assert that the family name is spelled "Kalogeras," *see* Answer to First Am. Compl., dated Nov. 10, 2016 (Dkt. No. 39), at 1, and plaintiffs agreed, on January 13, 2017, to amend the caption accordingly.

that the Firm has a conflict of interest stemming from its representation of Gonzalez, who was "not a sandwich maker but rather the day manager" at the Jackson Hole restaurant on Madison Avenue, with authority to hire and fire employees, grant time off, schedule breaks and meal periods, and supervise other employees, including Muniz. *See* Def. Mem. of Law (Dkt. No. 44), at 2. Further, defendants assert, attorney Faillace and the Firm were aware of Gonzalez's true status and responsibilities because they represented another group of Jackson Hole employees in a previous (now settled) wage and hour lawsuit in this District, entitled *Ortiz, et al. v. Re Spec. Corp., et al.*, No. 14–CV–00270 (AJN), in which "Gonzalez was repeatedly identified as a manager by the *Ortiz* plaintiffs in their examinations before trial at which attorney Faillace appeared and represented these workers." Def. Mem. of Law at 3. Although Gonzalez is no longer a plaintiff in this action, defendants contend that "his shadow remains to cast doubt" upon "the merit of the entire claim and whether attorney Faillace should not be disqualified and the action dismissed." *Id.* at 2–3. In addition, defendants argue, Gonzalez "could have been in possession of confidential information" and could have passed that information to the Firm to assist counsel in identifying the new plaintiffs added in the First Amended Complaint. *Id.* at 3, 12.

## FACTS

Gonzalez worked at defendants' Madison Avenue restaurant from February 1988 to March 2013, when it closed. Compl. ¶ 15; Decl. of George Kalogeras, dated Oct. 13, 2016 (Dkt. No. 42), ¶ 7.

On January 14, 2014—ten months after Gonzalez left defendants' employ—the Firm filed the *Ortiz* action on behalf of a group of employees and former employees at both restaurants. On February 13, 2015, the Firm filed a separate action, entitled *Juarez v. Re Spec Corp.*, No. 15–CV–01057 (AJN), on behalf of additional employees. On May 27, 2015, *Ortiz* and *Juarez* were consolidated, with *Ortiz* designated the lead case. On September 30, 2015—five days before the consolidated case was scheduled for trial—the parties informed United States District Judge Alison J. Nathan that the action was settled, and on January 7, 2016, United States Magistrate Judge Ronald L. Ellis, who had presided over the settlement negotiations, approved the parties' agreement as fair and reasonable.

Before the *Ortiz* matter settled, three of the plaintiffs in that case testified at deposition that Gonzalez was one of their supervisors at the Madison Avenue restaurant. Fernando Arellanes testified that five people supervised him at that location, including Gonzalez (whom he called Octavio) and four members of the Kalogeras family: Vivian, George, Thomas, and Stelio. *See* Fernando Arellanes Dep. (Kalogeras Decl. Ex. A), at 35. Octavio, Vivian and Stelio set his schedule. *Id.* at 35–36. Vivian or Stelio set his pay and gave it to him. *Id.* at 36. Asked who told him what to do when he was working, the witness testified:

A. They would give the order to Octavio, and Octavio would give us the order.

Q. Who would give the order to Octavio?

A. All four of them.

*Id.* at 36. Arnulfo Vasquez and Iginio Arellanes gave similar testimony, identifying Octavio as one of the individuals who supervised them, along with various members of the Kalogeras family. *See* Vasquez Dep. (Kalogeras Decl. Ex. B), at 21; Iginio Arellanes Dep. (Kalogeras Decl. Ex. C), at 32.

Gonzalez was neither a plaintiff nor a defendant in *Ortiz* (or its constituent actions), did not testify at deposition, and

was not on either side's witness list for trial. *See* Jt. Prelim. Trial Rep., dated Sept. 15, 2015 (Dkt. No. 78 in 14–CV–00270), at 11–13. The defendants in *Ortiz*—including both of the corporations and two of the Kalogeras family members named as defendants here—made no effort to add Gonzalez as a third-party defendant. This action was filed on April 18, 2016, three months after *Ortiz* was dismissed and more than three years after Gonzalez's employment at Jackson Hole ended.

Defendant George Kalogeras is or was a part-owner of defendant 3K Foods, which operated the Madison Avenue restaurant, and defendant Re Spec Corp, which operated the Columbus Avenue location. Kalogeras Decl. ¶ 3. He attests that Gonzalez was "the day manager" of the Madison Avenue restaurant, and as such "may be liable for the alleged workplace claims" of Muniz and other present plaintiffs. *Id.* ¶¶ 2(A), 8. In fact, he predicts, Gonzalez "will be added as a Third Party Defendant." *Id.* ¶ 2(B)(i). Kalogeras goes on to state that Gonzalez was "exempt from the minimum wage/overtime requirements" and therefore was "not within the class of persons who may state a claim for relief under either federal or New York law" governing minimum wage and overtime payments. *Id.* ¶¶ 2(E), 2(G). Kalogeras does not provide any further information or attach any documents to support his claim that Gonzalez was exempt. He does provide additional detail concerning Gonzalez's duties and responsibilities as the day manager of the Madison Avenue restaurant:

> Gonzalez opened the restaurant in the morning, hired and fired employees, granted time off, scheduled breaks and meal periods, paid vendors, ordered supplies and otherwise was a person who exercised management authority for operation of the restaurant during the time when Plaintiff Muniz was employed there.

*Id.* ¶ 8.

Further, according to Kalogeras, over Gonzalez's "long association" with 3K Foods he learned unspecified corporate "confidences and secrets," which were "made known to him in order for him to fulfil his duties as a manager." Kalogeras Decl. ¶ 12. These secrets and confidences were "possibly" obtained by the Firm to defendants' prejudice. *Id.* ¶¶ 29, 31, 33.

Kalogeras also asserts, somewhat mysteriously, that Gonzalez was "technically represented by my counsel, as were all of the other managers and officers of the corporate defendants," in the prior litigation. Kalogeras Decl. ¶ 13; *see also id.* ¶ 29 (Gonzalez was "technically represented by our company attorney in the *Ortiz* matter"). Kalogeras does not elaborate on what it means for a person who is neither a party nor a witness in a case (and who was no longer employed by the corporate defendants) to be "technically represented" by defendants' counsel. There is no evidence that Gonzalez played any role in defending the *Ortiz* litigation or engaged in any privileged communications with defendants' counsel in that case.

In their opposition brief, plaintiffs argue that Gonzalez was paid hourly and therefore was *not* exempt from the wage and hour laws as a manager and *could* be a plaintiff in a wage and hour suit.[2] However, they do not submit any evidence on this

---

**2.** If plaintiffs are correct, Gonzalez could, in theory, refile his claims under the NYLL, which has a six-year statute of limitations. *See* N.Y. Lab. Law § 198(3). His federal claims, however, would be barred by the three-year statute of limitations contained in the FLSA. *See* 29 U.S.C. § 255(a) (generally, a two-year statute of limitations applies to FLSA claims, however a three-year statute of limitations applies to willful FLSA violations).

point, relying instead on the allegations contained in the now-withdrawn original Complaint. *See* Pl. Mem. of Law, filed Nov. 23, 2016 (Dkt. No. 52), at 4. Aside from the question of how Gonzalez was paid, plaintiffs do not challenge any of the facts sworn to by Kalogeras. Their brief does not discuss whether the Firm still represents Gonzalez. Nor does it disclose whether the Firm obtained informed consent for the multiple representation from each of its clients.[3]

Defendants did not file any reply papers.

## ANALYSIS

### I. Motion to Disqualify

 "The question of whether to disqualify counsel is solely within the Court's discretion." *Brooks v. Knowledge Eng'g Inc.*, 1994 WL 121851, at *2 (S.D.N.Y. Apr. 7, 1994) (Sotomayor, J.). *See also Reyes v. Golden Krust Caribbean Bakery, Inc.*, 2016 WL 4708953, at *8 (S.D.N.Y. Sept. 1, 2016) (disqualification motions "are 'committed to the sound discretion of the district court'") (quoting *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994)). The authority of the federal district courts to disqualify attorneys "derives from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). Although disqualification decisions are frequently informed by the rules of professional conduct governing attorneys in the jurisdiction in which the district court sits, "such rules merely provide general guidance." *Id.*, 409 F.3d at 132 (internal citations omitted). "[N]ot every violation of a disci-

plinary rule will necessarily lead to disqualification," *id.* in part because "[d]isqualification is viewed 'with disfavor in this Circuit.'" *Intellipayment, LLC v. Trimarco*, 2016 WL 1239261, at *4 (E.D.N.Y. Mar. 29, 2016) (quoting *Bennett Silvershein Assocs. v. Furman*, 776 F.Supp. 800, 802 (S.D.N.Y. 1991)).

 Disqualification is disfavored because it "has an immediate adverse effect on the client by separating him from counsel of his choice," and because motions to disqualify, "even when made in the best of faith ... inevitably cause delay." *Nyquist*, 590 F.2d at 1246. Motions to disqualify opposing counsel "are subject to particularly strict scrutiny" because of their "potential for abuse as a tactical device." *Scantek Med., Inc. v. Sabella*, 693 F.Supp.2d 235, 238 (S.D.N.Y. 2008). The movant must therefore satisfy a "high standard of proof." *Intellipayment*, 2016 WL 1239261, at *4 (quoting *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791–92 (2d Cir. 1983)). "[M]ere speculation" regarding the reasons for disqualification is insufficient. *Gormin v. Hubregsen*, 2009 WL 508269, at *2 (S.D.N.Y. Feb. 27, 2009) (quoting *NL Indus., Inc. v. PaineWebber, Inc.*, 1990 WL 43929 (S.D.N.Y. Apr. 9, 1990)). "'[T]he motion will be granted only if the facts present a real risk that the trial will be tainted.'" *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F.Supp.2d 381, 388 (S.D.N.Y. 2010) (quoting *U.S. Football League v. Nat'l Football League*, 605 F.Supp. 1448, 1452 (S.D.N.Y. 1985)).

With this standard in mind, the Court now turns to the specifics of defendants' motion.

---

**3.** During an in-court conference on January 13, 2017, in response to a question from the Court, counsel for defendants stated that he was "pretty sure" that Gonzalez was paid hourly, as plaintiffs allege. During the same conference, plaintiff's counsel confirmed that the Firm has not terminated its attorney-client relationship with Gonzalez. Nor has it obtained the written consent of its various clients to the multiple representation.

## A. Rule 1.7

Rule 1.7(a)(1) of the New York Rules of Professional Conduct (RPC), 22 N.Y.C.C.R. § 1200.0, which addresses conflicts among current clients, states in pertinent part that a lawyer "shall not represent a client if a reasonable lawyer would conclude that ... the representation will involve the lawyer in representing differing interests." Such a conflict is waivable, if, among other things, the lawyer "reasonably believes that [he] will be able to provide competent and diligent representation to each affected client," the representation "does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation," and "each affected client gives informed consent, confirmed in writing." RPC 1.7(b).

■ Defendants argue that the Firm is involved in representing differing interests within the meaning of Rule 1.7(a)(1) because one of its clients, Gonzalez, may qualify as an "employer" under the expansive definition of that term used in both the FLSA and the NYLL, and therefore is potentially liable to the current plaintiffs in this action, who are also the Firm's clients. *See* Def. Mem. of Law at 7–8; Kalogeras Decl. ¶¶ 2(B)(i)-(ii).[4] Since the Firm could not under any circumstances sue one client on behalf of another in the same action, *see* RPC 1.7(b)(3), its multiple representation potentially limits its ability to zealously pursue the rights of the present plaintiffs. Citing *Estates Theatres, Inc. v. Columbia Pictures Indus., Inc.*, 345 F.Supp. 93, 99 (S.D.N.Y. 1972) ("[a] lawyer should not be permitted to put himself in a position where, even unconsciously, he will be tempted to 'soft pedal' his zeal in furthering the interests of one client in order to avoid an obvious clash with those of another, at least in the absence of the express consent of both clients"), defendants conclude that the Firm "cannot continue [its] representation without violation of the

4. Under the FLSA an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). To determine whether an individual fits within this definition, courts in this Circuit consider "whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (internal citation omitted) (quoting *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961)). "[T]he relevant factors include 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id.* (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). The economic reality test is intended to encompass "the totality of circumstances," and no one factor is dispositive. *Id.; see also Irizarry v. Catsimatidis*, 722 F.3d 99, 116 (2d Cir. 2013) (concluding, after analyzing fac- tors, that chairman and CEO of a supermarket chain who had "functional control over the enterprise as a whole" was an "employer" within the meaning of the FLSA). Because of the breadth of the "economic reality" test, "[a]n employee may simultaneously have multiple employers within the meaning of the FLSA." *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F.Supp.3d 490, 509 (S.D.N.Y. 2015) (holding that the sole owner and president of a restaurant corporation who "actively exercised operational control and oversight" over the restaurant was personally liable along with the corporation as plaintiffs' "employer"). Under the NYLL, an "employer" is any "person employing any [employee]." N.Y. Lab. Law § 2(6). The New York Court of Appeals has not yet determined whether the employer test under the NYLL is the same as under federal law. *See Rosas v. Alice's Tea Cup, LLC*, 127 F.Supp.3d 4, 13 (S.D.N.Y. 2015) (citing *Irizarry*, 722 F.3d at 117). However, district courts within this Circuit have interpreted the definition of employer under the NYLL coextensively with the definition used by the FLSA. *Id.; see also Inclan*, 95 F.Supp.3d at 511.

Rules of Professional Conduct and disqualification must be ordered." Def. Mem. of Law at 11.

Preliminarily, it should be noted that the conflict posited by defendants affects only Gonzalez and the current plaintiffs—who would also be the only parties disadvantaged by any "soft-pedaling" of the Firm's zeal. In plaintiffs' view, therefore, defendants have no standing to raise the issue. *See* Pl. Mem. of Law at 1, 4; *see also, e.g.,* *A.F.C. Enterp., Inc. v. N.Y.C. Sch. Constr. Auth.,* 33 A.D.3d 736, 823 N.Y.S.2d 433 (App. Div. 2006) (affirming denial of disqualification motion on standing grounds and collecting cases). The federal courts, however, generally take the view that any party to a lawsuit may raise a potential conflict. *See, e.g., In re Fischer,* 202 B.R. 341, 352 (E.D.N.Y. 1996) ("both opposing counsel and the court have independent obligations to examine a possible attorney-client conflict"); *Adams v. Vill. of Keesville,* 2008 WL 3413867, at *10 (N.D.N.Y. Aug. 8, 2008) ("Given the court's oversight obligation, a motion to disqualify an attorney, even if brought by an unaffected party, is an appropriate means by which to bring the conflict issue to the court's attention."). For this reason, the Court will not deny the motion on standing grounds. However, the fact that the alleged Rule 1.7(a) conflict would not adversely affect the moving defendants may shed light on whether the motion is a "tactical device," *Scantek Med.,* 693 F.Supp.2d at 238, designed primarily to disrupt plaintiffs' case rather than to preserve the integrity of the adversary process.

In considering whether the Firm has a conflict within the reach of Rule 1.7(a), the Court need not determine the sole factual issue contested by the parties, namely, whether Gonzalez was a proper plaintiff in this action. The more relevant question is whether he is a proper *defendant,* and, if so, whether that fact alone—in the absence of any evidence that the current plaintiffs plan to sue him or have good reason to sue him—gives rise to a conflict requiring disqualification.[5] Defendants have presented evidence that Gonzalez, along with others, had the power to (a) hire and fire, and (b) supervise and control employee work schedules. Kalogeras Decl. ¶¶ 8–9; Fernando Arellanes Dep. at 35–36. These are two of the four factors set forth in *Carter,* 735 F.2d at 12. There is no evidence that Gonzalez maintained employment records, and mixed evidence on the issue of who set plaintiffs' pay rates. *Compare* Kalogeras Decl. ¶ 11 (Gonzalez "determined or effectively recommended employee scheduling and pay rates"), *with* Fernando Arellanes Dep. at 36:

> Q. Who decided what your pay was going to be?
> A. Both of them, Stelio and Vivian.
> Q. Anybody else?
> A. No.

It seems fairly clear, moreover, that whatever authority Gonzalez had was sub-

---

**5.** It is at least theoretically possible for a midlevel employee with supervisory duties to be both a plaintiff and a defendant in wage and hour litigation. *See, e.g., Volz v. Provider Plus, Inc.,* 2015 WL 5734916 (E.D. Mo. Sept. 29, 2015) (after plaintiffs added Director of Respiratory Services Lange as a defendant in wage and hour case brought under FLSA and state law, Lange also appeared on the list of potential class members and was sent the class action notice). In *Volz,* the court recognized that plaintiffs' counsel "cannot both sue Lange on behalf of members of that class and represent Lange as a member," *id.* at *2 (citing the Missouri version of RPC 1.7(a)), explained that "the real dispute is the remedy," *id.,* and ordered that Lange be "excluded from the class of respiratory therapists which may consent to join *this* lawsuit," *id.* (emphasis in the original), but remain "free to file her own lawsuit." *Id.* No one in *Volz* suggested that either plaintiffs' or defendants' counsel be disqualified.

ordinate to the authority of the Kalogeras family members. *See* Fernando Arellanes Dep. at 36 ("They [George, Thomas, Stelio, and Vivian] would give the order to Octavio, and Octavio would give us the order."); *see also Chen v. E. Mkt. Rest., Inc.,* 2015 WL 5730014, at *7 (S.D.N.Y. Sept. 30, 2015) (declining to enter summary judgment against various individuals alleged to be joint employers of plaintiff restaurant workers where none of them had "unilateral control over the material aspects of the conditions of employment").

On this record, the Court cannot determine whether it would be possible for the current plaintiffs to name Gonzalez as an additional defendant in compliance with Fed. R. Civ. P. 11(b)(2) (requiring that all claims in a pleading be warranted by existing law or by a non-frivolous argument for extending or modifying the law) and 11(b)(3) (requiring that all factual contentions have evidentiary support). Even assuming that Gonzalez *could* be named as a defendant, however, the mere possibility of a legally cognizable claim between or among a group of jointly represented clients does not require disqualification of their counsel. *See, e.g., Flaherty v. Filardi,* 2004 WL 1488213, at *3 (S.D.N.Y. July 1, 2004) (fact that one defendant could potentially assert an indemnity cross-claim against the other did not require disqualification of their joint counsel where "no cross-claims have been made, and none are anticipated to be made in the future"); *Drag Racing Techs., Inc. as D.R.T., Inc. v. Universal City Studios, Inc.,* 2003 WL 1948798, at *4 (S.D.N.Y. Apr. 24, 2003) (existence of potential cross-claims among jointly represented defendants did not require disqualification of their counsel where it was in their "common interest to mount a unified defense"); *Tartaglia v. City of New York,* 1999 WL 151104, at *2 (S.D.N.Y. Mar. 19, 1999) (no disqualifying conflict existed between two jointly represented defendants where, "[a]s the litiga-

tion now stands, they share an interest in challenging plaintiff's allegations"). *See also All Star Carts & Vehicles, Inc. v. BFI Can. Income Fund,* 2010 WL 2243351, at *7 (E.D.N.Y. June 1, 2010) (denying motion to disqualify law firm that represented both the named plaintiffs in an antitrust class action and a competitor likely to be the subject of third-party discovery because "the conflict of interest raised by Defendants is too speculative at this point in the litigation to require disqualification").

Muniz and the other current plaintiffs have shown no interest in suing Gonzalez as their employer. *See* Pl. Mem. of Law at 1 (Gonzalez "has not [been] and will not be sued as a Defendant in this case"). Any conflict, therefore, is potential rather than actual. *See All Star,* 2010 WL 2243351, at *4; *Drag Racing,* 2003 WL 1948798, at *6. Further, nothing now before the Court suggests that a competent and zealous attorney representing the current plaintiffs *would* or *should* pursue claims against Gonzalez, who may not have the personal financial resources to satisfy a judgment and who, in any event, is likely more valuable to plaintiffs as a non-hostile witness than as a defendant. *See* RPC 1.7 cmt. [8] (N.Y. State Bar Ass'n 2009) (where a conflict "foreclose[s] alternatives that would otherwise be available" to a client, the critical questions include whether those alternatives "reasonably should be pursued on behalf of the client").

It is significant, in this regard, that the Firm made no effort to proceed against Gonzalez (or any other non-owner managers) in *Ortiz,* at which point counsel was unburdened with any allegedly conflicting loyalties. Nor did defendants make any effort to bring Gonzalez in as a party in that case. These facts, while not dispositive, also militate against the conclusion that suing him is an alternative that "rea-

sonably should be pursued" on behalf of the present plaintiffs. The Court thus does not perceive any "risk that the trial will be tainted," *U.S. Football League,* 605 F.Supp. at 1452, or other threat to the integrity of the adversary process.

Even if the interests of the Firm's current clients differed sufficiently to be deemed a conflict for the Firm, that conflict would appear to be waivable, pursuant to RPC 1.7(b), so long as the Firm reasonably believes that it can provide competent and diligent representation to each of its clients and "each affected client gives informed consent, confirmed in writing." RPC 1.7(b)(4). *Cf. Estates Theatres,* 345 F.Supp. at 97–98 (granting disqualification motion where, after counsel for plaintiffs proposed to amend the complaint to accuse another long-time client of being a member of an antitrust conspiracy, the targeted client refused to consent).

That said, the Firm's failure to obtain such consent thus far is somewhat troubling. *See* RPC 1.7 cmt. [23] ("multiple representation of persons having similar interests in civil litigation is proper if the requirements of paragraph (b) are met"). A prudent attorney, upon undertaking a joint or multiple representation (whether of plaintiffs or defendants), will inform each client at the outset of the engagement concerning the risks of group representation, including any potential conflicts apparent at that time, and ask each client to confirm his or her consent in writing.[6] The price of forgoing this step includes the risk that "the lawyer will be forced to withdraw from representing all of the clients if the common representation fails." RPC 1.7 cmt. 29A; *see also* RPC 1.9(a).

### B. Rule 4.2

In addition to their argument based on RPC 1.7, defendants "submit that Gonzalez could have been in possession of confidential information," Def. Mem. of Law at 3, including information helpful to the Firm in adding new plaintiffs to the case, and that there is an "irrebuttable presumption" that such information was conveyed as a result of the Firm's representation of Gonzalez. *Id.* at 12. Defendants do not identify any particular ethical rule in connection with this portion of their argument. However, since it is clear that the "confidences and secrets" they seek to protect are not Gonzalez's personal secrets—rather, they are matters "made known to him" by defendants "in order for him to fulfill his duties as a manager," Kalogeras Decl. ¶ 12—the Court construes this branch of the motion to raise a challenge under RPC 4.2(a), which prohibits a lawyer from communicating with "a party the lawyer knows to be represented by another lawyer in the matter" without the prior consent of the other lawyer. Defendants argue, in effect, that when the Firm communicated with Gonzalez it was communicating with 3K Foods—a represented party—in violation of Rule 4.2(a).

That contention is meritless. In *Niesig v. Team I,* 76 N.Y.2d 363, 559 N.Y.S.2d 493, 558 N.E.2d 1030 (1990), the New York Court of Appeals considered whether "the employees of a corporate party [are] also considered 'parties'" for purposes of Disciplinary Rule 7–104(A)(1), which predated RPC 4.2(a) and contained the same ethical prohibition on *ex parte* contacts with represented parties. 76 N.Y.2d at 367–68, 559 N.Y.S.2d 493, 558 N.E.2d 1030.[7] *Niesig*

---

6. *See, e.g.,* Lucien T. Pera, *The Ethics of Joint Representation,* 40 Litig. 1, 3–4 (Am. Bar Ass'n 2013); John J. Doyle, Jr., *The Defendants' Perspective: Ethical Considerations in Representing and Counseling Multiple Parties in Employment Litigation,* 10 Lab. Law. 19 (1994).

7. DR 7–104(A)(1) provided, in relevant part: "During the course of [the] representation of a client a lawyer shall not . . . [c]ommunicate or cause another to communicate with a party [the lawyer] knows to be represented by a lawyer in that matter unless [the lawyer] has

concluded that "party" status applies only to current employees of corporate parties. *Id.* at 369, 559 N.Y.S.2d 493, 558 N.E.2d 1030. This is a bright-line test routinely applied by the federal courts sitting in New York. *See Arista Records LLC v. Lime Grp. LLC,* 784 F.Supp.2d 398, 416 (S.D.N.Y. 2011) ("A lawyer may have *ex parte* contact with the opposing party's former employees."). Gonzalez was last employed by 3K Foods in March 2013, well before either this action or *Ortiz* was filed. Kalogeras Decl. ¶ 7. There is no suggestion in the record that the Firm contacted Gonzalez before his employment was terminated, and consequently no basis for finding any violation of Rule 4.2(a).[8]

Defendants' use of the word "privilege" does not alter the balance of their motion. *See, e.g.,* Kalogeras Decl. ¶ 32 (arguing that by representing Gonzalez, attorney Faillace likely had access to "relevant privileged information of the defendants, including the ability to solicit other former employees as plaintiffs"). Defendants do not identify, even in general terms, the nature of any privileged information that Gonzalez learned or explain when he learned it. As noted above, they do not claim that he played any role in their defense of the *Ortiz* case or was otherwise privy to any confidential communications between 3K Foods and its counsel. Nor do they explain why the Firm required "privileged" information—as opposed to information readily available from the *Ortiz* plaintiffs who were already its clients or the payroll records produced in that

case—to identify and bring claims on behalf of the current plaintiffs.

Even before *Niesig* drew a bright line between present and former employees, the courts required "evidence" that "specific privileged information" in the possession of an ex-employee was in jeopardy before considering a "narrowly-tailored order" to protect that privilege. *See, e.g., Polycast Tech. Corp. v. Uniroyal, Inc.,* 129 F.R.D. 621, 628 (S.D.N.Y. 1990) (refusing to prohibit plaintiff's counsel from engaging in *ex parte* communications with the former Director of Strategic Planning and Business Development for defendant Uniroyal's Engineered Products Group). No such evidence has been presented in support of defendants' disqualification motion.

## II. Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) permits a district court to dismiss a pleading or portions thereof for failure to state a claim upon which relief can be granted. In their motion papers, defendants invoke Rule 12(b)(6), and correctly set out the standard for determining a motion made thereunder, but fail to identify any deficiencies in the Amended Complaint. *See* Def. Mem. of Law at 4–5. Instead, defendants argue that the Firm knew when it filed the original Complaint that Gonzalez "was not a proper plaintiff." *Id.* at 11–12. Defendants go on to argue that Gonzalez's now-withdrawn claims were deficient in various respects, *id.* at 12–14; that these deficiencies were known to the Firm, *id.* at 11–12, 14; and therefore that the Firm violated Fed. R.

---

the prior consent of the lawyer representing such other party or is authorized by law to do so." *Niesig,* 76 N.Y.2d at 368 n.1, 559 N.Y.S.2d 493, 558 N.E.2d 1030.

**8.** Even among the current employees of a corporate party, the prohibition of Rule 4.2(a) applies only to those "whose acts or omissions in the matter under inquiry are binding on the corporation (in effect, the corpora-

tion's 'alter egos') or imputed to the corporation for purposes of its liability, or employees implementing the advice of counsel." *Niesig,* 76 N.Y.2d at 374, 559 N.Y.S.2d 493, 558 N.E.2d 1030. Here, defendants' motion papers did not argue—and they certainly have not established—that Gonzalez met this standard while employed as day manager of the Madison Avenue restaurant.

Civ. P. 11 by filing claims that it knew to be meritless. *Id.* at 12–14.

To the extent the motion to dismiss is addressed to the claims previously asserted by Gonzalez, it is moot, those claims having been withdrawn. To the extent the motion is addressed to the current claims of the remaining plaintiffs, it is meritless, no deficiencies having been identified in the operative claims. The relevance of defendants' citation to Rule 11 is unclear, as they have not made—and could not now make—a motion for sanctions under that rule with respect to the original Complaint. *See* Fed. R. Civ. P. 11(c)(2). There is some interplay between Rule 11 and the Rules of Professional Conduct, in that RPC 1.16 requires a lawyer to decline or terminate the representation of a client if the lawyer knows or reasonably should know that such person wishes to bring a frivolous claim. Defendants have not identified any authority, however, suggesting that a violation of Rule 1.16 as to one client disqualifies the offending attorney from representing other clients whose claims are not frivolous.

## CONCLUSION

For the reasons set forth above, it is hereby ORDERED that:

1. The motion to disqualify plaintiffs' counsel and to dismiss the Amended Complaint (Dkt. No. 41) is DENIED.

2. Defendants may move to amend the pleadings to include a third-party claim against Gonzalez on or before **January 31, 2017.** The motion must be accompanied by a copy of defendants' proposed pleadings and must address (a) the effect of the proposed amendment on the schedule governing the existing claims; and (b) defendants' compliance with Fed. R. Civ. P. 11(b)(1), which prohibits the presentation of a claim (including a third-party claim) "for any improper purpose, such as to harass, cause unnecessary delay, or need-

lessly increase the cost of litigation." In particular, defendants should explain why they did not assert any claims against Gonzalez in *Ortiz,* nor seek leave to do so here until their disqualification motion was denied. The motion to amend will not stay discovery or any other pretrial obligations.

3. The Firm shall advise the Court by letter, filed on ECF no later than **February 21, 2017,** whether it has obtained informed consent for its concurrent representation of all of the current plaintiffs and Gonzalez, confirmed in writing, in accordance with RPC 1.7(b)(4). Should defendants seek to renew their disqualification motion thereafter, they must first submit a letter-motion requesting an informal premotion conference with the Court.

4. The deadline to complete all discovery is extended to **March 31, 2017.** The Court will conduct a status conference on **March 9, 2017, at 10:00 a.m.** in Courtroom 9A, 500 Pearl Street, New York, NY 10007. In advance of that conference, and no later than **March 2, 2017,** the parties shall submit a joint status letter outlining the progress of discovery to date, as well as their settlement efforts. If no discovery disputes exist at that time the parties may request that the conference be held telephonically. All other provisions of the Court's September 26, 2016 Initial Case Management and Scheduling Order (Dkt. No. 37) remain in effect.

5. The Clerk of the Court is respectfully directed to substitute defendants George Kalogeras, Thomas Kalogeras, and Dimitri Kalogeras in the place and stead of George "Kalogera," Thomas "Kalogera," and Dimitri "Kalogera."

This Memorandum and Order resolves Dkt. No. 41.

**SO ORDERED.**